AGNES S. LYON, an Infant, etc., Respondent, *v.* THE MANHATTAN RAILWAY COMPANY, Appellant.

In construing amendments to a statute the original act with all its amendments must be read together and viewed as one act passed at the same time, and no part of the original or the amendments is to be held inoperative if they can all be made to stand and work together.

The amendment of the section of the Code of Civil Procedure in reference to the form of the order for taking the deposition of a party or witness before trial (§ 873) made in 1893 (Chap. 721, Laws of 1893), which, after providing that "In every action brought to recover damages for personal injuries, the court or judge, in granting an order for the examination of the plaintiff before trial may, if the defendant apply therefor, direct that the plaintiff submit to a physical examination by one or more physicians or surgeons," also provides that "Where the defendant shall present to the court or judge satisfactory evidence that he is ignorant of the nature and extent of the injuries complained of, the court or judge shall order that such physical examination shall be made," does not violate any of the express or implied restraints upon the legislative power to be found in the Federal or State Constitution.

Such amendment, however, does not authorize an order directing a physical examination apart from or independent of an examination of plaintiff as a witness before trial.

(Argued April 23, 1894; decided May 1, 1894.)

APPEAL from order of the General Term of the Court of Common Pleas for the city and county of New York, made

March 9, 1894, which reversed an order of Special Term directing a physical examination of the plaintiff before trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Julien T. Davies* for appellant.   The learned General Term erred in reversing the order on the ground that the statute does not provide for a physical examination apart from the plaintiff's examination as a witness at the instance of the defendant.  (Laws of 1893, chap. 721; Code Civ. Pro. §§ 872, 873.)   The order of the Special Term was in the form prescribed by the statute.  (Code Civ. Pro. §§ 872, 873; *Jenkins* v. *Putnam*, 106 N. Y. 276; *Herbage* v. *City of Utica*, 109 id. 81; *Glenny* v. *Stedwell*, 64 id. 120; *Carter* v. *Good*, 57 Hun, 116; *Wahle* v. *McMillan*, 2 Misc. Rep. 343.) The statute providing for a physical examination is constitutional, the legislature having conferred the power which the Court of Appeals has held did not exist at common law. (*McQuigan* v. *D., L. & W. R. R. Co.*, 129 N. Y. 50; *Botsford* v. *U. P. R. R. Co.*, 141 U. S. 250.)   The object of the statute in providing for a physical examination of the plaintiff is to furnish evidence at a trial to enable the court to determine an important question in the controversy, namely, the amount of damages to be awarded, and is analagous to the unchallenged powers of the courts to compel discovery, long exercised in many cases. (*Salisbury* v. *Howe*, 87 N. Y. 128; *Gindrat* v. *People*, 138 Ill. 103; *State* v. *Grow*, 107 Mo. 341; *Richards* v. *State*, 82 Wis. 172; *Andrews* v. *Youmans*, 82 id. 81; *S. L., etc., R. Co.* v. *Claunch*, 41 Ill. App. 592; *Stewart* v. *C., etc., R. Co.*, 89 Mich. 315; *Springer* v. *City of Chicago*, 135 Ill. 552; *Alberti* v. *N. Y., L. E. & W. R. Co.*, 118 N. Y. 77; *Blair* v. *Pelham*, 118 Mass. 420; *Baker* v. *Perry*, 67 Iowa, 146; *D. G. M. Co.* v. *Taussig*, 33 Hun, 32; *Haynes* v. *Hatch*, 39 N. Y. S. R. 805; *Blocker* v. *Guild*, 15 Daly, 348; *E. M. Co.* v. *Hazzard*, 26 J. & S. 556; *Gilpin* v. *Daly*, 59 Hun, 413; *In re Coleman*, 111 N. Y. 220; *People* v. *Schuyler*, 106 id. 298; *Edington* v. *Æ. Ins. Co.*, 77 id. 564;

*Marx* v. *M. R. Co.*, 56 Hun, 575 ; *Treanor* v. *M. R. Co.*, 14
N. Y. Supp. 270 ; *Devenbagh* v. *Devenbagh*, 6 Paige, 175 ;
*Le Barron* v. *Le Barron*, 35 Vt. 365 ; *Newell* v. *Newell*, 9
Paige, 25 ; *Anon.* v. *Anon.*, 89 Ala. 291.) The power to order
a physical examination of the plaintiff has been held to be
inherent by the tribunals of thirteen states, and the claim here
made, that the legislature could not confer the power, is, obvi-
ously, without merit. (*Schroeder* v. *C., R. I., etc., R. Co.*, 47
Iowa, 375 ; *White* v. *M., etc., R. Co.*, 61 Wis. 536 ; *A. G. S. R.
R. Co.* v. *Hill*, 90 Ala. 71 ; *Sibley* v. *Smith*, 46 Ark. 295 ;
*C., etc., R. R. Co.* v. *Holland*, 122 Ill. 461 ; *Hatfield* v. *S. P.,
etc., R. Co.*, 33 Minn. 130 ; *Lloyd* v. *R. R. Co.*, 53 Mo. 509 ;
*Sidekum* v. *W. S. L. & P. R. Co.*, 93 id. 400 ; *Owens* v. *K.
C., etc., R. Co.*, 95 id. 169 ; *Shepherd* v. *M. P. R. Co.*, 85 id.
629 ; *M., etc., R. R. Co.* v. *Johnson*, 72 Tex. 95.) The statute
compelling a physical examination of the plaintiff will act as a
potent means of preventing injustice by enabling the courts
to learn the truth in regard to the extent of the alleged
injuries. (*Hagenlocher* v. *C. I. & B. R. R. R. Co.*, 99 N.
Y. 137 ; 1 Taylor on Ev. [6th ed.] 49 ; *Tracy Peer*, 10 Cl.
& Fin. 191 ; *Roberts* v. *N. Y. E. R. R. Co.*, 128 N.
Y. 457.)

*Nelson Smith* for respondent. In the absence of a statute,
a defendant is not entitled to a physical examination of the
person of the plaintiff in an action to recover damages for
personal injuries. (*McQuigan* v. *D., L. & W. R. R. Co.*, 129
N. Y. 50 ; *U. P. R. Co.* v. *Botsford*, 141 U. S. 250 ; *Roberts*
v. *O. & L. C. R. R. Co.*, 29 Hun, 154 ; *Newman* v. *T. A. R.
R. Co.*, 28 J. & S. 412 ; *S. C. R. R. Co.* v. *Finlayson*, 16
Neb. 578–588 ; *Lloyd* v. *R. R. Co.*, 53 Mo. 515.) The order
that the plaintiff submit to a physical examination, and the
statute upon which it is founded, would violate the rights of
the plaintiff, secured by the Federal Constitution, to sue for
the injuries she has sustained, and have her case tried. (*Cor-
field* v. *Coryell*, 4 Wash. C. C. 380, 381 ; *Slaughter House
Cases*, 16 Wall. 75, 76 ; *In re Ah Fong*, 3 Sawyer's C. C. 145,

157; *Ward* v. *Maryland,* 12 Wall. 430; *U. P. R. Co.* v. *Botsford,* 141 U. S. 552; *Boyd* v. *U. S.,* 116 id. 616, 624, 627; Cooley on Const. [4th ed.] 715, 716; *Smith* v. *Turner,* 7 How. [U. S.] 283, 410–464.) The order directing the physical examination would violate the right of liberty secured to the plaintiff by article 14 of the Federal, and article 1, section 6, of the State Constitution. (*People* v. *Marx,* 99 N. Y. 386; *Bertholf* v. *O'Reilly,* 74 id. 515; *In re Jacobs,* 98 id. 98.) Assuming that a person may be deprived of the right to sue in the courts by due process of law, the order directing the physical examination is not " due process of law," and is, in its nature, an extra-judicial proceeding. (*Taylor* v. *Porter,* 4 Hill, 140; *Hurtado* v. *California,* 110 U. S. 521; *White* v. *White,* 5 Barb. 481; *Roberts* v. *O. R. Co.,* 29 Hun, 158.) The inspection in suits for nullity of a marriage contract, on the ground of impotence, bears no analogy to the physical examination claimed in actions for personal injuries. (*U. P. R. Co.* v. *Botsford,* 141 U. S. 250; Bishop on Mar. & Div. §§ 1298, 1299, 1308, 1309.) The order in question is not appealable. (*Brooks* v. *M. N. C. Co.,* 93 N. Y. 647; *Harris* v. *Burdett,* 73 id. 136.)

O'Brien, J. The complaint in this action alleges that in the month of October, 1892, the plaintiff, a young girl then under age, was a passenger upon one of the defendant's trains, and that she was seriously injured by reason of a collision, such injury affecting the spinal column and whole nervous system. These allegations were put in issue by the answer. The defendant obtained an order from one of the judges of the court in which the action was pending, directing the plaintiff to appear before a referee named in the order, at her residence, at a date designated, and then and there submit to a physical examination in respect to the nature and extent of the injuries claimed, to be conducted by two medical experts named, in the presence of such women as she might desire to have present, but not in the immediate presence of the referee, unless the plaintiff should so elect. The General Term has

reversed the order, and this appeal brings the questions here
for review.   The ground upon which the order was reversed
is that the defendant was not entitled to an order for such an
examination except at the time of granting one for her exami-
nation as a witness or a party before the trial, and that a sepa-
rate physical examination alone is not authorized.   On the
argument before us in support of this reversal, the learned
counsel for the plaintiff does not rest the case wholly upon the
reasons given by the General Term, but attacks the statute as
in conflict with the Federal and State Constitutions.   He
insists that such conflict arises from the fact that the plaintiff
is required, as a condition of prosecuting her action in the
courts, to expose her person against her will.   That the statute
in effect interferes with the sacredness and privacy of her own
person, and deprives her of her liberty and natural rights and
the equal protection of the laws.   The argument, though per-
haps novel, and subject to the objection that it seeks to push
a principle to extremes, is not without interest on account of
the ideas advanced and the manner of their presentation.   In
the view we take of the questions involved in the appeal, it
will not be necessary to follow the discussion.   The statute
enacts a rule of procedure, the purpose of which is the dis-
covery of the truth in respect of certain allegations which the
plaintiff has presented for judicial investigation in the courts
of justice.   It prescribes a method of aiding the court and
jury in the correct determination of an issue of fact raised by
the pleadings, and, as it seems to me, does not violate any of
the express or implied restraints upon legislative power to be
found in the fundamental law.   But, in regard to the meaning
and construction of the statute, I think the court below was
entirely correct.   The general purpose of the enactment was
to change a rule of the common law which had recently been
asserted by the highest court and by this court.   (*The Union
Pacific Railway Co.* v. *Botsford*, 141 U. S. 250 ; *McQuigan*
v. *D., L. & W. R. R. Co.*, 127 N. Y. 50.)

   It is not necessary in this case to insist that the statute
should be subjected to a strict construction, but certainly it

ought to receive a construction that would make it fair and reasonable in its operation. By chapter 721 of the Laws of 1893, section 873 of the Code of Civil Procedure was amended by inserting the following provision in the middle of that section :

" In every action to recover damages for personal injuries, the court or judge, in granting an order for the examination of the plaintiff before trial, may, if the defendant apply therefor, direct that the plaintiff submit to a physical examination by one or more physicians or surgeons to be designated by the court or judge, and such examination shall be had and made under such restrictions and directions as to the court or judge shall seem proper.

" In every action brought to recover damages for personal injuries, where the defendant shall present to the court or judge satisfactory evidence that he is ignorant of the nature and extent of the injuries complained of, the court or judge shall order that such physical examination be made."

The learned counsel for the plaintiff contends that under the section as now amended, the physical examination is not authorized apart from or independent of the examination before trial, while the learned counsel for the defendant contends that the second clause of the amendment provides for a mere physical examination, distinct and apart from the other words of the amendment, and from the preceding or subsequent sections of the Code. In other words, he separates this clause from the rest of the section and from the other sections relating to examinations of parties, and insists that it contains within itself everything necessary to its execution as an independent enactment. · I take it to be a settled rule of statutory construction that an original statute with all its amendments must be read together and viewed as one act passed at the same time. (*Goldman* v. *Kennedy*, 49 Hun, 157.) No part of the original or the amendment is to be held inoperative if they can all be made to stand and work together. I assume that had section 873 as now amended been originally enacted in its present form, no one would claim that it should

then receive the construction now claimed in behalf of the defendant, and yet we must read it and the other sections on the same subject as if they had been passed in the present form at the same time.

But the most serious objection to the defendant's construction is, that under it, it would be utterly impossible to attain the end which the legislature had in view, and it would, in fact, defeat every practical and useful object sought to be accomplished. The section, as amended, provides that the examination shall be had before the judge or a referee, and a referee was actually appointed in the order in this case and the plaintiff directed to appear before him. For what purpose? If the defendant's construction be correct, he could not administer an oath to any one, or ask a single question, or make any report of the proceeding. He could not even be present at the examination unless the plaintiff required it. The plaintiff might stand mute and no one could compel her to answer a single question put by the medical experts or any one else. The experts are not required to reduce anything to writing or make any report to the court, and no provision is made for a record by any one. All the defendant can get from the proceeding upon this construction is an opportunity to have two physicians inspect the plaintiff's person as to any external marks or symptoms of injury or disease, for the purpose of enabling them to testify at the trial, it may be years afterwards. The defendant's counsel cannot even know in advance of the trial what testimony the experts can give, whether for or against him, unless, after an appointment by the court, they should volunteer to disclose to him the results of their observation, and this might not be regarded as entirely proper on their part, as they were in some sense officers of the court, or at all events, impartial as between the parties, a character that they should preserve in order to give to their testimony much weight at the trial. So that when the proceedings are finished practically nothing has been accomplished. The parties have not advanced much in the process of discovering where the truth is. They are for all practical purposes just where they started.

Moreover, how is it possible for medical experts to make a physical examination in a case like this, or indeed in most cases, by merely observing the external marks or indications of personal injury or disease? The term itself implies not only such observation, but an inquiry by means of questions and answers as to the cause, nature, character and extent of the disability. Mere external appearances are, in themselves, of no consequence unless identified and connected with the accident as the cause, and, hence, disclosures such as ordinarily occur between patient and physician must necessarily accompany the inspection of the injured parts. It is clear, I think, that such an examination as the statute contemplates can never be obtained under the defendant's construction. It must be held that the legislature intended to enact some useful and practical rule in the administration of justice, that would promote the discovery of truth and not to do a vain thing. In order to reach this simple and just result all we need do is to read the amendment as a part only of the general scheme prescribed by the Code for the examination of parties before trial. In order to give even color to the other view it must be detached from the context and from all its surroundings, and read as if it stood alone, in disregard of settled rules of construction. We must reject provisions of the same section, and other sections on the same subject, of the plainest import, as wholly inapplicable to this particular examination. The statute has in terms provided that the physical examination shall be procured in the same way and as part of an examination of the party before trial, and in that way only and by conforming to the general provisions of law on the subject can the object and purpose of the amendment ever be attained. This construction gives effect to every word of the section as amended, and is in harmony with the other sections immediately preceding and following it. Then the referee becomes something more than a mere spectator at an idle ceremony. He may take the plaintiff's testimony upon the issue and report to the court as upon an examination before trial. He has, of course, power to administer an oath and to authenticate the proceedings, and the

plaintiff is bound to appear before him and answer all proper questions with respect to the nature and extent of the injuries, whether framed by the medical experts from their own examination or as a part of it, or by the counsel present. It becomes a fair struggle for truth, and both parties may participate. The record of the examination is placed on file, and both sides know what must be met if it is introduced in evidence, as it may be. The statute upon this construction becomes a valuable accession to the rules for administering justice, and not an instrument to be used by one party to surprise his antagonist at the trial, or, in some cases, possibly himself. That this is the fair and reasonable, and, indeed, the necessary construction of the section as it now stands, I cannot doubt. Moreover, the other view would, in the end, be most unfortunate for the defendant and parties situated as the defendant is. We know that in actions of this character brought by women against corporations considerations sometimes influence the jury, other than those growing out of the law and the facts applicable to the case. When facts are found upon conflicting evidence and damages assessed, the accuracy of the mental process upon which the jury acted cannot ordinarily be reviewed. It is not desirable to increase the chances of injustice by adding new elements that are liable to be used at the trial against corporations in this class of actions. Mr. Justice Gray, in the Supreme Court of the United States in the case of *The Union Pacific Railway Co.* v. *Botsford* (*supra*), remarked that "The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass." This amendment has changed the law, but it is not so certain that it will ever change the general sentiment of mankind which was expressed in that remark. The power conferred by the amendment should never be used in such a way as to leave any doubt as to the fairness and good faith of the proceeding, otherwise it may prove to be a sword

instead of a shield. It should be a fair and open inquiry after truth, in which both sides are or may be actors. If it is used only for the purpose of enabling the defendant to prepare expert witnesses to give testimony at the trial it will be hardly possible to keep the fact from the jury, and it is easy enough to see how such an element in the case might be used to excite sympathy, stimulate prejudices, and in some cases possibly to enhance damages.

The order appealed from should be affirmed, with costs.

All concur, except EARL, FINCH and BARTLETT, JJ., dissenting.

Order affirmed.