THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARLIN-ROCKWELL CORPORATION, Defendant.

City Court of Jamestown, January 30, 1929.

*Albert Ottinger, Attorney-General [Alexander A. Tausky, Assistant Attorney-General, and Reba Talbot Swain of counsel], for the People.*

*Swift & Potter [Parton Swift and Robert H. Jackson of counsel], for the defendant.*

BARGAR, J.   It is not disputed in this case that on Saturday, the 8th day of September, 1928, one Gunnar Anderson, a factory inspector, under the provisions of the Labor Law of the State of New York, visited the factory operated by the defendant corporation; that he observed on this occasion a certain female employee of the defendant, one Mae Perry, at work cleaning a machine at twelve-ten P. M.; that the schedule of hours, as posted in the factory under the provisions of the statute, showed that the hours for work for females over twenty-one years of age was from seven-thirty A. M., to noon on Saturdays.   It is the contention of the People, under these facts, that this constituted a violation of section 174, article 5, of the Labor Law, and the question to be determined is whether or not this is the law applicable to the defendant, the latter having properly raised the question upon the trial upon the charge.

The defendant put in evidence a schedule of overtime, under the provisions of section 172 of the Labor Law, as amended by chapter 453 of the Laws of 1927, in effect January 1, 1928, and contends that this constitutes a complete defense to the charge.

The rule is general that an original statute and all its amendments must be read together and viewed as one act passed at the same time (*Lyon v. Manhattan R. Co.*, 142 N. Y. 298), so that in considering the charge under the provisions of section 174 of article 5, we must gather the intent of the Legislature from a consideration of the Labor Law as it existed on the 8th day of September, 1928. While section 174 definitely fixes the requirements of a notice " stating the daily hours of labor required of all persons subject to this title and the time that the work shall begin and end," and that such employees " shall not be otherwise permitted to work therein," and under the provisions of section 172 of the Labor Law of 1921, females above the age of twenty-one years were not to work (a) " more than six days or fifty-four hours in any week; " or (b) " more than nine hours in any day, except that she may be employed ten hours a day to make a shorter work day or holiday on any day of the week."   When section 172 was amended in 1927, such amendment became subject " to this title," and section 174 must be deemed to have been intended to conform to the changed language.   It might have been fairly argued under the provisions of the original statute

that there was a nine-hour day, or its mathematical equivalent, provided; that the Legislature contemplated exactly this rule for each and every week, and that the presence of any such employee in the factory at times not included in the notice should be *prima facie* evidence of a violation of the act.

But the amendment of sections 172 and 181 of the original act (Laws of 1921, chap. 50) evidenced an intention to abandon this arbitrary rule.    In providing generally for a reduction of the hours of labor to not (a) " more than six days of forty-eight hours in any week," with the exception of provisions " b " and " c ". of the same sections, the Legislature clearly intended to make a concession to the employer to the extent of relieving him of the exact condition as to hours, upon his conforming to the requirements of the act. It granted, not an absolute eight-hour day, but a day which could not exceed, in a year of 312 calendar days, aside from Sundays, eight and one-quarter hours, nor, on an average, in excess of such number of hours in any one week of the year.    The language of the statute in subdivisions " b " and " c " is, (b) " more than eight hours in any day, except that she may be employed nine hours a day to make a shorter work day or holiday on any one day of the week, in which event she may be employed on five days of the week at not to exceed nine hours on each of such days and not more than four and one-half hours on such shorter work day and not in excess altogether of forty-nine and one-half hours in any such week; (c) Notwithstanding the provisions of paragraphs a and b and in addition to the hours of work therein authorized, she may be employed for not to exceed an additional seventy-eight hours in any calendar year.  In the distribution of such overtime herein authorized, no female shall be required, permitted or suffered to work more than ten hours on any day, and in no case shall she be employed for more than six days nor more than fifty-four hours in any week.    Before the commencement of such additional or overtime employment, the employer shall post a notice on a form furnished by the commissioner, stating the amount of overtime which shall be required, in each room where the employees are employed or report for duty, and in cases where less than all the employees are to be employed on overtime the names of the employees to work during such overtime shall be posted also.    A copy of such notice shall be forthwith mailed to the commissioner."

No question is raised that there has been any failure to post this notice; it is conceded, and the notice in evidence shows that the time when the overtime was to commence was five o'clock, and that it was to terminate at five-fifteen on five days of the week, and at twelve o'clock, and twelve-fifteen on Saturdays.    That is,

there were to bc nine hours and fifteen minutes of labor for five days, and four hours and forty-five minutes on Saturdays, making forty-nine and three-quarters hours for the week, with no day exceeding ten hours, no week exceeding six days, and no aggregate of hours exceeding fifty-four within the week. This schedule went into effect on the 1st day of January, 1928, and, if we assume 312 working days for the year, which makes no allowance for the National holidays which are very generally observed, it cannot be said that on the 28th day of September, 1928, the defendant was guilty of a violation of section 174, or of any other section of the Labor Law. The schedule required by the amendment of section 172 shows the addition of one-fourth of an hour to each day of the week, whether of a full or part day, and for the 312 working days of the year this is exactly seventy-eight hours of overtime which the statute allows, the net result of which is a working day of eight hours and fifteen minutes throughout the year, instead of an eight-hour day as contended for by the People.

The statute is complex upon its face, but an analysis shows that the real purpose was a more equitable adjustment of the relations; a substantial working day of eight hours under ordinary circumstances, with a margin of adjustment which might add to the facility of doing business. In other words, the Legislature had very definitely in mind the economic, social and industrial background which would prohibit a strict and literal forty-eight-hour law. " A statute, like a will or contract, is to be construed as a whole, and in applying this principle of construction, it is not material in what order provisions, which at first blush seem contradictory, are placed. The meaning is to be collected *ex antecedentibus et consequentibus*, and a later provision may be qualified by a prior one, or the contrary." (*People ex rel. Mason* v. *McClave*, 99 N. Y. 83, 89.) When a general intention is expressed and also a particular intention incompatible with the general intention, the particular intention is to be considered as in the nature of an exception. (*Hoey* v. *Gilroy*, 129 N. Y. 132, 138.) But here the provisions under analysis show a clearly defined purpose, and the defendant has in good faith complied with the conditions upon which it is entitled to the use of the seventy-eight hours of overtime. In fact it appears that the defendant made a definite and studied effort to obey and comply with the statute and not to violate it.

Defendant discharged.