DRIVER, APPELLEE, *v.* THE F. W. WOOLWORTH CO., APPELLANT.

(Decided February 16, 1938.)

*Messrs. Amerman & Mills,* for appellee.

*Messrs. Black, McCuskey, Ruff & Souers,* for appellant.

MONTGOMERY, P. J.   Judgment was obtained in the Court of Common Pleas by the plaintiff, appellee in this court, upon a petition which, in substance, averred that the defendant, appellant here, did sell to the plaintiff a certain article of beauty preparation known as and described as "Pinaud's Six-Twelve Runproof Mascara," representing same to be in all respects a

proper cosmetic to use on this plaintiff's eyebrows and eyelashes; that plaintiff purchased a tube of the same in reliance upon the representations; that, after the application of said mascara to her eyebrows and eyelashes, she was seriously infected and poisoned as the result of this mascara containing poisonous, harmful and injurious ingredients; that the infection spread over her body causing her intense pain and suffering and necessitating heavy expenditures; and that an incurable damage and infection to her eyes and skin resulted. From that judgment an appeal was perfected to this court.

There are seventeen specifications of error, all of which have been considered, but we find no merit in any of them, except as hereinafter indicated.

If the trial court ruled correctly on the defendant's petition for discovery, then it is not subject to criticism for assigning the action for trial as was done, because the delay in filing an answer, as shown by the transcript, was unconscionable. And if the defendant, by its dilatory tactics, disqualified the regular jury, its objection to the jury which tried the case would make no appeal to us. If, on the other hand, the trial court committed prejudicial error in its ruling on the petition for discovery, then these claimed errors in assigning the action for trial and in impaneling a jury, became unimportant. If another trial be ordered, any ruling upon these claims would be of no value in a subsequent hearing, as a different situation would then exist.

The petition for discovery is in the following language:

"Now comes the defendant, The F. W. Woolworth Company, under authority of Section 11555 of the General Code of the state of Ohio, and represents to the court that it is unable to file its answer in this cause for the reason that the plaintiff is withholding

from the defendant evidence which is necessary for the defendant to have before an answer can be filed to the petition of the plaintiff. The plaintiff has in her possession a portion of a tube of mascara which she alleges she purchased at one of the defendant's stores in the city of Canton. She alleges, in her petition, that this mascara contains poisonous, harmful and injurious ingredients. Defendant has demanded that she produce said tube of mascara so that the same may be analyzed by a reputable chemist for the purpose of determining what, if any, poisonous, harmful, and injurious ingredients are in said tube of mascara contained. Plaintiff has been advised by her counsel not to permit said tube of mascara to be analyzed and this is being done for the purpose of hindering and preventing the defendant from filing its answer to the petition of the plaintiff.

"Wherefore, this defendant prays the court for an order requiring said plaintiff to produce said tube of mascara in court, or deliver the same to the defendant, or have said tube of mascara analyzed by a reputable chemist and furnish the defendant with a copy of said analysis. The defendant asks for such other and further relief as it may be entitled to under Section 11555 of the General Code of the state of Ohio."

The lower court did not refuse to entertain this petition on the ground of laches. It sustained a general demurrer and, therefore, the allegations of the petition are to be treated as true, including the allegation that this alleged conduct of the plaintiff was for the purpose of hindering and preventing the filing of an answer, which is pleaded as a fact. During the course of the trial, the defendant's counsel moved that the plaintiff be required to produce the tube of mascara. This motion was overruled. The sustaining of this demurrer and the overruling of this motion are assigned as error. They go to the same proposition and

constitute the only assignment of error which we deem worthy of extended discussion.

After this demurrer was sustained, an answer was filed to the original petition, which averred that this questioned preparation was a standard preparation manufactured and sold to the trade by Pinaud's, Inc., of New York, one of the leading manufacturers of cosmetics in the United States; that this Six-Twelve Mascara is sold generally in all stores where cosmetics are sold, and sold in the original packages in which it is received from the manufacturer; that the defendant had no knowledge of the ingredients contained in the package, and that it made no representation to this plaintiff with reference thereto. The answer denied the other allegations of the petition, and it further averred the demands upon the plaintiff for the production of the tube of mascara for the purpose of having the same analyzed by a reputable chemist in order that its ingredients might be determined, and that, while the plaintiff admitted the possession of the tube, she refused to deliver it for the purpose of having an analysis, and refused to give any analysis of the same.

To this answer interrogatories were attached. One of these interrogatories read: ''What are the ingredients of Pinaud's Six-Twelve Mascara, as shown by chemical analysis made at the request of and for the plaintiff?'' The interrogatories were answered and the answer to the quoted one was: ''No chemical analysis has been made.''

Counsel urge as a ground of error, the refusal of the court to charge, although requested to do so, that the jury should treat these answers as evidence. It is to be observed that Section 11350, General Code, simply provides that: ''On the trial, such answers, so far as they contain competent testimony on the issue or issues made, may be used by either party.'' This refusal to charge was not erroneous.

Section 11555, General Code, upon which the right of discovery was based, is in the following language:

"When a person claiming to have a cause of action, or a defense to an action commenced against him, without a discovery of the fact from the adverse party, is unable to file his petition or answer, he may bring an action for discovery, setting forth in his petition the necessity therefor, and the grounds thereof, with such interrogatories relating to the subject-matter of the discovery as are necessary to procure the discovery sought, which, if not demurred to, must be fully and directly answered under oath by the defendant. Upon the final disposition of the action, the costs thereof shall be taxed in such manner as the court deems equitable."

We take it that the sustaining of such a demurrer is reviewable. It is contended that this is a matter of discretion with the trial court. It seems to us such a question is at least reviewable to determine whether the court exercised a sound discretion. This depends upon the facts, as disclosed from the record in the case. *Newburg Petroleum Co.* v. *Weare,* 44 Ohio St., 604, 610, 9 N. E., 845.

That such a ruling is generally held reviewable is indicated in the opinion of *Reynolds, Admx.,* v. *Burgess Sulphite Fibre Co.,* 71 N. H., 332, 51 A., 1075, 57 L. R. A., 949, 93 Am. St. Rep., 535, to which we will hereinafter refer in considerable detail.

Counsel for plaintiff were asked in open court their reasons for their refusal to permit this analysis. They replied that this tube was their own property; that to submit it to the defendant would subject them to testimony of specialists; that their client had not the money with which to provide the analysis herself. This response was answered by the unchallenged assertion from the defendant's counsel that they had offered to pay for any such analysis. Under Section

11555 the court had the authority for taxing the costs thereof as it might deem equitable.

Moreover, it is to be observed that this petition for discovery is in the alternative. It asks that the plaintiff be required "to produce said tube of mascara in court, or deliver the same to the defendant, or have said tube of mascara analyzed by a reputable chemist and furnish the defendant with a copy of said analysis."

It is urged that even though the analysis had been had, as requested, this would not have changed the results. Such a claim is not necessarily justified. The real issue in this case was whether this article, purchased and used, caused the injury which the plaintiff sustained. That is a question of fact, and the litigants were entitled to have all competent evidence bearing upon that issue. The matter of original package does not enter into this consideration.

There was a further claim made that, even though plaintiff's injuries were sustained by the use of this mascara, it was, nevertheless, not of itself poisonous or dangerous, and that plaintiff's condition must have been allergic.

The latest pronouncement of the Supreme Court of Ohio on this subject is in the case of *Great Atlantic & Pacific Tea Co.* v. *Hughes,* 131 Ohio St., 501, 3 N. E. (2d), 415. The third paragraph of the syllabus in that case is as follows:

"3. A charge of the sale of food in violation of the statute may be sufficiently shown to require submission of the question for the determination of the jury, though there be no proof of its unwholesomeness by chemical or bacteriological analysis or examination."

The court in its opinion on pages 503 and 504 says:

"Concisely stated, our only question is whether a charge of the sale of food in violation of the statute may be established in the absence of proof of its un-

wholesomeness by chemical analysis or bacteriological examination. It must be conceded that unwholesomeness is not a quality to be attributed to food just because it 'disagrees' with the person eating it, as the resulting effect is ordinarily stated. The language of the statute contemplates that the unwholesomeness prescribed shall consist of a diseased, corrupted, adulterated or other condition having the effect of rendering such food deleterious to the health of normal persons generally.''

As we view it, our Supreme Court has gone no further than to say that a case may be proven without a chemical analysis, but does not hold that a chemical analysis is unimportant or incompetent.

Consider the evidence in the instant case: The only positive testimony to the effect that the injuries sustained were the result of the use of this mascara, was the testimony of the plaintiff herself. Dr. Peters testified that when she visited him she was suffering from dermatitis veneditis, which he stated meant inflammation due to poison. He further discussed allergy, but stated that in his judgment this particular patient was suffering from dermatitis and poisoning.

Dr. Driver stated that, when the patient called upon him, she was suffering from a ''contact dermatology from an external source,'' and said that mascara could cause the condition from which she was suffering. On cross-examination, as shown by the record, Dr. Driver stated: ''I would not say that it would cause it, unless she was susceptible,'' referring to this mascara.

Henri Coutinho, whose deposition was taken, stated that he was thoroughly familiar with all the substances used in the combination in the preparation of mascara, and that there was nothing in this material injurious to the human body or any part thereof, such as the eyes, and gave as his opinion that the plaintiff must be ''allergic to some substance or food and has

an idiosyncrasy which has manifested itself in the symptoms claimed, which have no relation whatever to her use of mascara.''

Jean Reland, whose deposition also was taken, and who testified as an expert, gave evidence to the same effect.

In view of the state of the record, and the evidence to which we have called attention, it seems to us that the actual, physical content of this material became exceedingly important, and that the defendant was entitled to know what were the actual ingredients in the substance in this tube. If plaintiff were fearful of parting with possession of it, she could have submitted a part for examination. As indicated, such an analysis might, or might not, have affected the jury in its conclusion, but the jury was certainly entitled to have this analysis for what it might be worth. We hold that the defendant was entitled to know and that the action of the court, in ruling as it did, constituted prejudicial error to the same extent that prejudicial error would ensue from the suppression of any other competent material evidence in an action on trial.

This Section 11555 of the General Code is, of course, a code provision superseding in Ohio the old right of discovery in equity, as the same is superseded in the great majority of other code states.

As stated by our Supreme Court in the case of Chapman v. Lee, 45 Ohio St., 356, at page 366, 13 N. E., 736:

''The doctrine and rules concerning the subject-matter of discovery established by courts of equity, are believed to be still in force and to control the same matters in the new procedure, but the bill of discovery, as a separate action, is practically obsolete in this state.''

The reason for the allowance of a bill of discovery

is succinctly stated in 3 Wigmore on Evidence (2 Ed.), 996, Section 1862:

"So far as concerned *chattels* and *premises* in his possession or control, the adversary in *common-law actions*, like the true gamester that the law encouraged him to be, held safely the trump cards of the situation, free from any legal liability of disclosure before trial; in this respect there was not recognized even the limited right of inspection (*ante,* Sec. 1858) which after the days of Lord Mansfield had been conceded for documentary evidence. But in *chancery,* under the same wholesome principle and practice by which bills of discovery were allowed for ascertaining the opponent's testimony and the documents in his possession (*ante,* Secs. 1856, 1857), the inspection of chattels and premises in his possession or control was obtainable wherever fairness seemed to demand it."

It is argued that Section 11555 applies only to documents. This claim seems to us not tenable, in view of the language of the statute itself. And the general proposition is stated further in 4 Wigmore on Evidence (2 Ed.), 653, Section 2194, in this language:

"If a person, by virtue of his very existence in civilized society, owes a duty to the community to disclose for the purposes of justice all that is in his control which can serve the ascertainment of the truth, this duty includes equally the mental impressions preserved in his brain, the documents preserved in his hands, the corporal facts existing on his body, and the chattels and premises within his control. There can be no discrimination. The latter forms of disclosure, though more rarely asked for, are not a whit the less necessary or proper. They are included in the general duty.

"Apart from specific privileges, then (*post,* Secs. 2210-2224) a person is bound, if required, to furnish evidence by exhibiting his *corporal features,* his *chat-*

*tels*, and his *premises*, to the inspection of the tribunal or its duly delegated officers, and to do or exhibit any other thing which may in any form furnish evidence.''

The Supreme Court of Ohio in the case of *Ex parte Schoepf*, 74 Ohio St., 1, 77 N. E., 276, 6 L. R. A. (N. S.), 325, stated the doctrine in the second paragraph of the syllabus as follows:

''2. The rule in chancery as to compelling the production of documents for the purpose of evidence and inspection was and is that a party is entitled to a discovery of such facts or documents in his adversary's possession or under his control, as are material and necessary to make out his own case; but that this right does not extend to a discovery of the manner in which the adverse party's case is to be established, nor to evidence which relates exclusively to the adverse party's case.''

The leading case on discovery cited in all recent textbooks and in all subsequent carefully considered cases on discovery which we have investigated, is that of *Reynolds, Admx.,* v. *Burgess Sulphite Fibre Co., supra.* This is an exceedingly well considered case and seems to us to answer all the propositions which have been raised in opposition to this right of discovery. In the course of its opinion that court said:

''As has been seen, the remedy for discovery in aid of actions at law was introduced for the very purpose of securing proper trials therein.'' It cites authorities to the effect that when a demand is made for the inspection of samples the opposing party may be ordered to furnish a portion of the sample in question. It holds specifically that ''neither does the right of discovery of books and documents depend upon the discretion of the court.''

That case involved the matter of a strap, and the court said: ''Justice requires that the plaintiff shall also have an opportunity to have the strap examined

by persons in whose skill and scientific knowledge she has confidence. There cannot be a fair trial of the case unless such opportunity is given to the plaintiff." The first, second and third paragraphs of the syllabus in this case as reported in L. R. A. are as follows:

"1. A bill of discovery will lie to compel an employer to produce, for the inspection of plaintiff, the broken parts of machinery, defects in which are alleged to have caused a death, to recover damages for which an action has been instituted at law which cannot be satisfactorily prepared for trial without such inspection.

"2. The production of broken machinery may be compelled for examination by persons intending to testify as experts in an action at law for personal injuries caused by its breaking.

"3. That an action at law seeks damages for a personal tort will not defeat a bill for discovery in aid of it, if it does not involve moral turpitude or immoral conduct on the part of defendant."

See also 1 Pomeroy's Equity Jurisprudence (3 Ed.), 257, Section 197 *et seq.*

It follows that the judgment of the Common Pleas Court will be reversed, and this cause will be remanded to that court for further proceedings.

*Judgment reversed and cause remanded.*

SHERICK and LEMERT, JJ., concur.