16034

WELSH v. GIBBONS
(46 S. E. (2d) 147)

*Mr. J. Arthur Knight,* of Chesterfield, for Appellant,

*Messrs. Jones E. Leppard* and *Wm. P. Gulledge,* of Chesterfield, for Respondent,

January 21, 1948.

OXNER, Justice: This is an action to recover damages on account of illness alleged to have resulted from drinking a small portion of a bottle of coca-cola which contained "sodium hydroxide, potassium hydroxide, caustic soda or concentrated lye, or some other foreign, poisonous and deleteri-

ous substance." Plaintiff alleged that said coca-cola was bottled and sold by the defendant and that the presence of said harmful, poisonous and deleterious matter was due to his negligence and wilfulness. The defendant denied the material allegations of the complaint. The trial resulted in a verdict for the plaintiff in the sum of $700.00.

After issues were joined and long prior to the trial, defendant sought permission of plaintiff to have a chemical analysis made of the contents of the coca-cola bottle which was then in the possession of plaintiff's attorney. The request was refused. Thereafter defendant served notice of a motion to require plaintiff to deposit said bottle with the Clerk of Court so as to permit a chemical analysis to be made and filed with the Clerk for use at the trial of the cause. This motion was heard by Honorable J. Woodrow Lewis, Resident Judge of the Fourth Circuit, who denied the motion upon the sole ground that the Court was not empowered to grant the relief sought. The first question to be determined on this appeal is the correctness of the order of Judge Lewis.

The privilege before trial of inspecting an article involved in an action and in possession of the other party was not accorded a litigant by the early common law courts of England. "The common law laid down as a maxim *memo tenetur armare adversarium suum contra se,* and, in furtherance of this principle, it generally allowed litigant parties to conceal from each other, up to the time of trial, the evidence on which they meant to rely, and would not compel either of them to supply the other with any evidence, parol or otherwise, to assist him in the conduct of his cause." Best on Evidence (International Ed. 1893-94), Section 624. This rule frequently resulted in a miscarriage of justice and hence there arose the equitable remedy of bills of discovery to assist the prosecution or defense of an action pending in the law court. The power to enforce discovery was one of the original and inherent powers of courts of equity and, according to the principles and practice of such courts, a bill could be filed for the discovery of facts in the

knowledge of an adverse party, or of deeds or writings, or other things in his custody and power. The distinction between the practice which prevailed in actions at law and that which obtained in chancery cases is stated as follows in Wigmore on Evidence, 2d Ed., Volume 3, Section 1862: "So far as concerned chattels and premises in his possession or control, the adversary in common-law actions, like the true gamester that the law encouraged him to be, held safely the trump cards of the situation, free from any legal liability of disclosure before trial; in this respect there was not recognized even the limited right of inspection (ante, Sec. 1858) which after the days of Lord Mansfield had been conceded for documentary evidence. But in chancery, under the same wholesome principle and practice by which bills of discovery were allowed for ascertaining the opponent's testimony and the documents in his possession (ante, Secs, 1856, 1857), the inspection of chattels and premises in his possession or control was obtainable wherever fairness seemed to demand it."

The production and inspection of books and papers in the hands of an adverse party, both in suits at law and in equity, are now obtained and regulated by statute, not only in England, but very generally in this country. Statutes have also been enacted in a number of states requiring a plaintiff in a personal injury action to submit to a physical examination in advance of the trial with the view of enabling the physicians to testify on the trial as to the nature and extent of the alleged injury and in many states authorizing a party to inspect any article of property in the possession of his adversary which may be involved in the action. There is quite a diversity of opinion as to the power of common law courts, in the absence of statute, to authorize such a physical examination or to provide for the examination or inspection of premises or chattels, the condition of which is involved in the pending litigation. It is held in many jurisdictions that the courts have the inherent power to do so and that an enabling statute is not necessary. Annotations on the sub-

ject of the power of the Court in negligence cases to provide for examination of premises or chattels the condition of which is involved in litigation will be found in L. R. A. 1917-E, page 838 and 33 A. L. R., page 16. An examination of the cases referred to in these annotations discloses that in a number of them the examination was ordered in equity cases or was sought by a bill of discovery in aid of an action at law. A more recent case is that of *Driver v. F. W. Woolworth Co.*, 58 Ohio App. 299, 16 N. E. (2d) 548. The plaintiff there brought an action to recover damages alleged to have been sustained from the use of a cosmetic sold by defendant which plaintiff claimed contained poisonous, harmful and injurious ingredients. The plaintiff was ordered by the Court to produce the tube containing said cosmetic in order to permit the contents to be analyzed by a reputable chemist, but the power of the Court to do so was sustained under a statute.

Section 673, Chapter 38, of the 1942 Code authorizes the Court to order an inspection of any books, papers and documents in the possession of a party to a pending action. Section 674, which is the first section of Chapter 39, provides: "No action to obtain discovery under oath, in aid of the prosecution or defense of another action, shall be allowed, nor shall any examination of a party be had on behalf of the adverse party, except in the manner prescribed by this chapter." The sections which follow authorize the examination of a party at or before trial at the instance of the adverse party and outline the procedure to be followed in obtaining such examination.

In *Easler v. Southern Railway Co.*, 60 S. C. 117, 38 S. E. 258, 260, the defendant, prior to the trial, made a motion for an order requiring the plaintiff to allow a personal examination to be made of him by a physician so that such physician could testify as a witness in the cause in behalf of the defendant. The Court below refused the motion on the ground that it was without power to grant such an order which this Court (Mr. Justice Jones dissent-

ing) sustained. After reviewing Chapter 39 of the Code, the Court said: "The remedy provided by the Code for taking testimony before a trial of the parties to the action, in behalf of the adverse party, is exclusive, and supersedes all remedies existing at the time of its adoption,·as hereinbefore stated. There is no statutory provision in this state empowering the court to order the physical examination of such a party." In *Best v. Columbia Street Railway, Light and Power Co.,* 85 S. C. 422, 67 S. E. 1, 3, which was an action to recover damages for personal injuries sustained, the question against arose as to whether the Circuit Court had the power to require a plaintiff suing for personal injury to submit to a physical examination by defendant's physicians or by physicians appointed by the Court. The question was answered in the negative under the authority of *Easler v. Southern Railroad Co., supra.* Mr. Chief Justice Jones, who as an Associate Justice dissented in the *Easler case,* in concurring stated that he was prepared to vote to overrule the *Easler case* "as unsound and contrary to the weight of reason and authority" but felt that until overruled he was bound to follow it. Mr. Justice Woods dissented and expressed the view that the Court had the power to order such a physical examination even though there was no statute granting it. The view adopted by a majority of the Court in these cases has been since followed and the question in this jurisdiction may now be regarded as settled. *Brackett v. Southern Railway Co.,* 88 S. C. 447, 70 S. E. 1026, Ann. Cas. 1912-C, 1212; *Deery v. Jefferson Standard Life Insurance Co.,* 174 S. C. 63, 176 S. E. 876.

There is no provision in our statutes authorizing the Court to require a party in a pending case to produce and permit his adversary to inspect an article or chattel in his possession or under his control. The power to compel a party to submit to an examination of his person before trial is of a similar nature to that invoked in the present case, and if, as held by this Court in the cases reviewed, the inherent power of the Court did not extend to the one case, it is difficult to

suppose that it embraced the other. As heretofore pointed out, provision has been made by statute in this State for the examination of a party on oath before trial at the instance of the other party and for the inspection of books and papers relevant to the controversy which are in possession of the adverse party, but the power now sought has never been conferred by any statute. The omission in these statutes of any reference to the power now under consideration is quite significant. That the lack of such power may, in certain cases, result in an injustice may be conceded. Cogent reasons may be advanced why such a power should be conferred upon the courts but we are here dealing only with the question of the power of the courts in the absence of any legislation. We reluctantly conclude that the courts do not have the inherent power to grant the relief now sought by appellant.

A similar conclusion was reached by the Courts of New York State. In *Wilson v. Collins,* 57 Misc. 363, 109 N. Y. S. 660, 661, decided in 1908, the plaintiff purchased from defendant a picture alleged to be the work of a celebrated artist. Thereafter, on discovering it to be only a copy, he returned it to defendant and sued to recover the purchase price. Prior to the trial he applied for an order permitting an inspection of the picture. In denying the motion, the Court said: "It appears to be well settled that the court has no power to compel a party to give to the adverse party an opportunity to inspect any property involved in the action, except such power as is conferred by section 803 of the Code of Civil Procedure. *Auerbach v. Delaware, L. & W. R. Co.,* 66 App. Div. 201, 73 N. Y. S. 118. The power conferred by section 803 is by the terms of the section, limited to 'a book, document or other paper.'" It appears that during the following year the remedy provided by Section 803 of the Code of Civil Procedure of New York State was enlarged so as to permit "discovery of any article of property." See *Dugan v. American Transfer Co.,* 160 App. Div. 11, 145 N. Y. S. 31, 33.

For the foregoing reasons the order of Judge Lewis is sustained.

The only other question to be determined is whether Judge Henderson, who presided at the trial, erred in refusing to admit testimony showing that plaintiff refused to permit the defendant to make a chemical analysis of the contents of the coca-cola bottle. During the trial plaintiff's attorney took the stand and testified that this bottle which had been introduced in evidence was brought to his office by plaintiff about the time of the commencement of the action and that he kept it in his safe until the time of the trial. On cross examination he stated that he had never had a chemical analysis made. He was then asked whether as plaintiff's attorney he refused to permit the defendant to make a chemical analysis of the contents of this bottle. Counsel for plaintiff objected. Judge Henderson sustained the objection. He held that the order of Judge Lewis determined that the defendant had no legal right to require the production of said bottle before trial for the purpose of having a chemical analysis made and that it would be improper to show that the plaintiff refused to do something which Judge Lewis had previously held he was not required to do.

We think this evidence was admissible and its exclusion prejudicial to the defendant. The refusal to permit such an examination warrants an inference that plaintiff was afraid to expose the facts which a chemical analysis would have disclosed. It is in the nature of an admission of weakness in plaintiff's case. We do not think it is a sufficient answer to say that he had a right to refuse defendant's request. He also had the legal right, which he chose to exercise, of not having a chemical analysis made himself but the failure to do so is certainly a circumstance to be considered by the jury in weighing the testimony. The situation is not unlike the unexplained failure of a party to produce evidence peculiarly within his control and properly a part of his case which justifies an inference that such evidence, if presented, would be unfavorable to him. *Wingate*

*v. Postal Telegraph & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307. In *Union Pacific Railroad Co. v. Botsford,* 141 U. S. 250, 11 S. Ct. 1000, 1002, 35 L. Ed. 734, the Court, in speaking of the right of a plaintiff in a personal injury action to exhibit his body to the jury for the purpose of showing the nature and extent of his injuries and his right not to be compelled to do so, made this observation: "If he unreasonably refuses to show his injuries, when asked to do so, that fact may be considered by the jury as bearing on his good faith, as in any other case of a party declining to produce the best evidence in his power." In Wigmore on Evidence, Volume 1, Section 289, the author in discussing the question of drawing an unfavorable inference from the failure of a party to produce evidence peculiarly within his control said: "The party's refusal to submit to a physical examination should likewise be open to inference, for he is virtually withholding evidence; and this is generally conceded." A case rather opposite is that of *Clark v. Tulare Lake Dredging Co.,* 14 Cal. App. 414, 112 P. 564, 573, which was an action for damages for the death of a minor son of plaintiff who was employed as a leverman on a dredge boat. In that case it was the plaintiff who sought an inspection. The facts surrounding the request for an inspection and the Court's ruling on the question of the admissibility of the testimony offered to show the refusal of such request are set forth in the following portion of the opinion: "The witness Williams with a view of becoming a witness for plaintiff, made an effort to go aboard the dredger for the purpose of inspecting the machinery, and thus equipping himself with such knowledge as would enable him to describe to the jury the dredger and the operation of its machinery. He was accompanied by counsel for plaintiff and one of the latter's surviving sons. The parties in charge of the dredger at the time would not permit them to go upon the dredger. Plaintiff introduced Williams to show the attitude of the employes of defendant in this matter, and the court, over an objection by defendant, permitted the witness to testify that the officers in charge of

the dredger had flatly refused to allow him to inspect and examine its machinery while in motion or at all. It is claimed that the allowance of said testimony was prejudicial error. We do not think so. Williams is a machinist and a stationary engineer, and it was proper to admit testimony which would bring clearly before the minds of the jury a description of the character of the machinery which the defendant had put the deceased in charge of and the nature of the operation of said machinery for the purpose of illustrating the probable manner in which the accident occurred. The refusal by the defendant's employes to permit this inspection, knowing, as they did, the purpose for which it was to be made, was a circumstance—whether of much weight or little weight it mattered not—tending to disclose a disposition on the part of the superintendent or captain to prevent plaintiff from presenting as complete a case as the circumstances would permit. It was, in other words, a circumstance having a direct tendency to establish an effort on the part of the defendant to suppress testimony, and there has never been any doubt that testimony showing or tending to show an attempt upon the part of a party to a suit to cover up, conceal, or otherwise prevent pertinent facts from being presented to the court or jury is competent and proper."

Whether defendant in the instant case bottled and sold coca-cola which contained poisonous or harmful ingredients was a vital issue in the case. Plaintiff had under his control the contents of this bottle, a chemical analysis of which would have been of much probative value in determining the truth of the charge made in the complaint. Plaintiff did not have such a chemical analysis made and declined to permit the defendant to do so. Our conclusion does not have the effect of indirectly permitting the evasion of Judge Lewis' order. The result would have been the same if defendant had merely requested such an inspection and had not sought the aid of the Court to compel it. In either case the effect is to prevent the defendant from offering material evidence. It does not follow from what has

been said that the jury is bound to draw an admission or an inference against plaintiff because of his failure to permit an inspection. That is a matter for the jury to determine from all the evidence. We merely hold that the evidence excluded was a circumstance which the jury should have been permitted to consider. Of course, it is open to the plaintiff to explain his refusal to allow a chemical analysis to be made of the contents of this bottle and on another trial he is at liberty to do so.

The order of Judge Lewis is affirmed. The judgment entered on the verdict of the jury is reversed and a new trial ordered.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.