## 18562

*Ex parte* GOODYEAR TIRE AND RUBBER COMPANY, Respondent. *In re* Deloris CANNON, by her Guardian *ad Litem*, Yvonne Cannon, Respondent, v. GOODYEAR TIRE AND RUBBER COMPANY, General Motors Corporation (Chevrolet Division), and W. Ray Long, Executor of the Estate of Gordon E. Long, Respondents, of whom W. Ray Long, Executor of the Estate of Gordon E. Long, is Appellant. Yvonne CANNON, Respondent, v. GOODYEAR TIRE AND RUBBER COMPANY, General Motors Corporation (Chevrolet Division), and W. Ray Long, Executor of the Estate of Gordon E. Long, Respondents, of whom W. Ray Long, Executor of the Estate of Gordon E. Long, is Appellant. Emma T. CANNON, Administratrix of the Estate of Melvin Cannon, Respondent, v. GOODYEAR TIRE AND RUBBER COMPANY, General Motors Corporation (Chevrolet Division), and W. Ray Long, Executor of the Estate of Gordon E. Long, Respondents, of whom W. Ray Long, Executor of the Estate of Gordon E. Long, is Appellant.

(150 S. E. (2d) 525)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant,*

*Messrs. McKay, McKay, Black & Walker,* and *Hoover Blanton, of Counsel,* of Columbia, *for Respondent,*

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant, in Reply,*

October 3, 1966.

BRAILSFORD, Justice.

This is an appeal from an order of the circuit court granting a petition by Goodyear Tire and Rubber Company for an opportunity to inspect an allegedly defective automobile tire in the possession of W. Ray Long, executor of the estate of Gordon E. Long, deceased. The controversy arises from a collision between an automobile operated by Melvin Cannon and one operated by Gordon E. Long, which oc-

curred in Lexington County on October 28, 1963. Both drivers were killed, and Deloris Cannon and Yvonne Cannon, passengers in the Cannon automobile, were injured. Separate actions for the wrongful death of Melvin Cannon and for the injuries to Deloris and Yvonne were commenced against W. Ray Long, as executor of the estate of Gordon E. Long, and others. Goodyear was joined as a defendant upon allegations that it negligently manufactured and sold a defective tire, with which the Long automobile was equipped, and that the rupture of this tire was a cause of the fatal collision. Long, as executor, filed a cross-action against his co-defendant, Goodyear, upon similar allegations, and only he has appealed from the order allowing an inspection.

Goodyear's request of the executor for permission to inspect the tire in his possession having been refused, it commenced this special proceeding by service of a petition and rule to show cause why inspection should not be allowed. The petition was wittingly framed to invoke the equity jurisdiction of the court. It contains appropriate allegations as to the necessity for an inspection and the absence of a remedy at law, and appeals to the power of the chancery court to promote justice between litigants.

The court found that this proceeding is in equity, that Goodyear cannot adequately prepare its defense in the law actions unless allowed an inspection of the tire before trial, including an opportunity for expert evaluation and study, and concluded that the relief sought should be granted as within the court's "intrinsic and general powers to do justice."

The appeal rests squarely upon the claim that the court exceeded its power by granting an inspection of the tire. Otherwise, the findings and conclusions below are unchallenged. Reliance is upon the decisions of this court in *Welsh v. Gibbons,* 211 S. C. 516, 46 S. E. (2d) 147, 175 A. L. R. 228, and *Bailey v. Lyman Printing and Finishing Co.,* 245

S. C. 13, 138 S. E. (2d) 410. In *Welsh,* the defendant was a bottler of Coca-Cola and the action was for damages allegedly sustained by drinking from a bottle containing poisonous substances. The defendant moved for leave to have a chemical analysis made of the contents of the bottle, which was in the possession of plaintiff's attorney. This motion was refused on the ground that the court lacked power to grant the relief sought and this court affirmed. In *Bailey,* we held that defendant's motion for leave to take samples of paint from plaintiff's home, allegedly damaged by defendant's wrongful act in polluting a stream, was properly denied under the rule adopted in *Welsh.*

At first blush, these two decisions appear formidable precedents against affirmance of the order appealed from. However, in each of them, the issue arose on motion in a law case, with no attempt to invoke the equitable power of the court. The significance of the different course which has been pursued by resourceful counsel in this special proceeding becomes apparent when we consider that discovery was an original, inherent power of the courts of equity and was not allowed in law courts. The opinion in *Welsh* explicitly recognized this difference between the powers exercised by the two courts under the former practice, and affirmed the inherent power of a court of equity, in furtherance of justice. to allow an inspection of chattels or premises in the hands of an adverse party. We quote:

"The privilege before trial of inspecting an article involved in an action and in possession of the other party was not accorded a litigant by the early common law courts of England. * * * This rule frequently resulted in a miscarriage of justice and hence there arose the equitable remedy of bills of discovery to assist the prosecution or defense of an action pending in the law court. The power to enforce discovery was one of the original and inherent powers of courts of equity and, according to the principles and practice of such courts, a bill could be filed for the discovery of facts in the knowledge of an adverse party, or of deeds or

writings, or *other things* in his custody and power. The distinction between the practice which prevailed in actions at law and that which obtained in chancery cases is stated as follows in Wigmore on Evidence, (2d) Ed., Volume 3, Section 1862: 'So far as concerned chattels and premises in his possession or control, the adversary in common-law actions, like the true gamester that the law encouraged him to be, held safely the trump cards of the situation, free from any legal liability of disclosure before trial; in this respect there was not recognized even the limited right of inspection which after the days of Lord Mansfield had been conceded for documentary evidence. But in chancery, under the same wholesome principle and practice by which bills of discovery were allowed for ascertaining the opponent's testimony and the documents in his possession, *the inspection of chattels and premises in his possession or control was obtainable wherever fairness seemed to demand it.' "* (Emphasis ours.) 46 S. E. (2d) 148.

After pointing out that our discovery statutes, Sections 26-501 through 26-512, Code of 1962, which have largely supplanted the old practice, contain no provision authorizing the allowance of the inspection of a chattel, the opinion stated the issue for decision to be whether the court has power, in the absence of any legislation, to order such an inspection, and declared: "We reluctantly conclude that the courts do not have the inherent power to grant the relief now sought by appellant." 46 S. E. (2d) 150. Despite the generality of this language, the effectiveness of the court's conclusion as a precedent is limited to the precise point before it, *i. e.,* that there was no error in the decision of the lower court that it lacked power to grant the relief on motion in a law case.

A different issue is presented here, *i. e.,* whether in a special proceeding in equity, in aid of a cause of action or defense in a pending action at law, the court has inherent authority, in promotion of justice and in the absence of a remedy under the statute, to allow inspec-

tion of a chattel in possession of an adverse party. The broad statement in the *Welsh* opinion, that the *courts* lack inherent power to allow inspection of a chattel, is not entitled to *stare decisis* application in resolving this issue. 20 Am. Jur. (2d), Courts, Section 191; 21 C. J. S., Courts, § 186. "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Cohens v. Virginia*, 6 Wheat. 264, 5 L. Ed. 257, quoted with approval in *Johnson v. Atlantic Coast Line R. R. Co.*, 142 S. C. 125, 140 S. E. 443.

The wisdom of this rule is illustrated by the opinion in *Welsh*. The conclusion of the court can be squared with the forepart of the opinion only by reading it, in the light of the issue, as negating inherent power in *courts of law* to grant this relief. Without this limitation, the conclusion is inconsistent with the opinion's earlier, explicit recognition that discovery was an original and inherent power of the chancery courts, and that this power included discovery of chattels.

*Bailey v. Lyman Printing and Finishing Co., supra*, 245 S. C. 13, 138 S. E. (2d) 410, adds no strength to the appellant's cause. There, we simply held that the attempt of the proponent of discovery to distinguish the case from *Welsh* was unsound, and followed our former decision without critical examination of it.

The opinion in *Welsh* equated the power to allow inspection of a chattel in the possession of an adverse party with the power to require a party to submit to physical examination of his person, and, in denying the existence of the former, relied upon the cases in this state, commencing with *Easler v. Southern Railway Co.*, 60 S. C. 117, 38 S. E. 258, which negate the latter. We do not regard these decisions as controlling of the issue *sub judice*.

Section 26-501, Code of 1962, provides: "No action to obtain discovery *under oath* in aid of the prosecution or defense of another action shall be allowed nor shall *any examination of a party* be had on behalf of the adverse party except in the manner prescribed by this chapter." (Emphasis ours.)

The opinion in *Easler,* after quoting extensively from *Lyon v. Manhattan Ry. Co.,* 142 N. Y. 298, 37 N. E. 113, 25 L. R. A. 402, to the effect that a physical examination of a party necessarily involves "an inquiry, by means of questions and answers, as to the cause, nature, character and extent of the disability. * * * (D)isclosures such as ordinarily occur between patient and physician must necessarily accompany the inspection of the injured parts.", concluded: "The remedy provided by the Code for taking testimony before trial of the parties to the action in behalf of the adverse party is exclusive, and supersedes all remedies existing at the time of its adoption, as hereinbefore stated. There is no statutory provision in this state empowering the court to order the physical examination of such a party." According to the court's view, *Easler* involved an attempted examination of a party, the right to which was limited by the statute, not extending to a physical examination, and which was proscribed altogether unless pursued in the required manner, which was not done. The inspection of a chattel does not involve the taking of testimony before trial, for which the statute provides an exclusive remedy, nor does it involve questions and answers or verbal disclosures of any kind. The relief sought may not be equated to an examination of a party and it is not being pursued by an action to obtain discovery *under oath.* Neither of the statutory proscriptions applies, nor does the statute provide any remedy in this field. It would be contradictory, and against the spirit and purpose of the statute, to hold that relief must be denied because the statutory remedy, which does not reach the case, has superseded the equitable remedy.

Our subsequent decisions denying the power of the court to order a party to submit to a physical examination simply follow *Easler* without adding anything to the rationale of that decision. See *Best v. Columbia Street Railway Co.,* 85 S. C. 422, 67 S. E. 1; *Brackett v. Southern Railway,* 88 S. C. 447, 70 S. E. 1026; *Deery v. Jefferson Standard Life Ins. Co.,* 174 S. C. 63, 176 S. E. 876.

Other courts have assigned reasons for denying physical examination of a party which are inapplicable to inspection of a chattel. We quote from the leading case of *Union Pacific Ry. v. Botsford,* 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734: "The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel anyone, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault, and a trespass."

The proposition stated in the passage from Wigmore on Evidence, quoted with approval in *Welsh, supra,* 211 S. C. 516, 46 S. E. (2d) 147, 175 A. L. R. 228, that discovery, as part of the original inherent jurisdiction of courts of equity, extended to discovery of chattels and premises in the hands of the adverse party, has the support of the overwhelming weight of authority in this country and in England. Annotations, Discovery—Article or Premises, 13 A. L. R. (2d) 657, 4 A. L. R. 3d 762. After stating the contrary rule applicable to courts of law, the annotator cites numerous cases to the proposition that "there is agreement among the American and English courts that a court of equity has power, even absent specific statutory authorization, to order discovery and inspection of articles or premises." 4 A. L. R. 3d 772. According to the annotator, the power was recognized by implication as early as 1686 in *Marsden v. Panshall,* 1 Vern 407, 23 Eng. Reprint 548. One of the most scholarly and frequently cited decisions on the point is *Reynolds v. Burgess Sulphite Fibre Co.,* 71 N. H. 332, 51 A. 1075, 57 L. R. A. 949, decided in 1902, in which inspection was allowed of the

pieces of a broken strap said to have caused the injury. We join these authorities in holding that where reasonably necessary in the promotion of justice, a court in the exercise of equity jurisdiction does have inherent authority to require discovery of a chattel in the possession of the adverse party. (We omit the citations which are readily available in 13 A. L. R. (2d) 661, *et sequa* and 4 A. L. R. 3d 772, *et sequa.*)

The jurisdiction formerly exercised by equity courts in this State is now vested in the Court of Common Pleas, which has jurisdiction in all civil cases. Constitution of South Carolina, 1868, Article 4, Sections 1 and 16; Constitution of South Carolina, 1895, Article 5, Sections 1 and 15. The distinct forms of action having been abolished, Constitution of South Carolina, 1868, Article 5, Section 3; Code of Laws of South Carolina, 1962, Section 10-8; Constitution of South Carolina, 1895, Article 6, Section 3, the equity jurisdiction of the court was properly invoked in the special proceeding instituted by Goodyear in aid of its defenses in the law actions. Code of Laws of South Carolina, 1962, Sections 10-7 through 10-10. We hold that the relief granted was within the power of the court in the exercise of its chancery jurisdiction.

Affirmed.

Moss, C. J., LEWIS and BUSSEY, JJ., and LIONEL K. LEGGE, Acting J., concur.