FRED BLACK, an Infant, by SAMUEL BLACK, His Guardian ad Litem, Plaintiff, v. NATHAN BISGIER, Defendant.

Supreme Court, Erie County, January 12, 1931.

*William J. Brock*, for the plaintiff.

*Locke, Babcock, Hollister & Brown*, for the defendant.

HINKLEY, J. This action is one in negligence for personal injuries. Defendant seeks a physical examination of plaintiff by Dr. John R. Gray, under section 306 of the Civil Practice Act. Plaintiff raises no objection to the private or professional standing, character or reputation of Dr. Gray. But the plaintiff, through his attorney and by his guardian *ad litem*, takes the arbitrary position that he does not like Dr. Gray, and, therefore, the court should not appoint him.

The plaintiff's counsel relies in the main upon a quotation contained in an opinion of Judge POUND at Special Term in 1912

in *Mizak* v. *Carborundum Co.* (75 Misc. 205, 207). The quotation is from a dissenting opinion of WILLIAMS, J., in *Potter* v. *Hammondsport* (112 App. Div. 91). " ' It seems to us the defendant should be permitted to have its own physicians or surgeons, the persons it would rely upon, to aid it in the trial, make the examination, providing they are reputable and not personally objectionable to the plaintiff.' "

Judge POUND quotes the language as indicative of the legislative intent. Surely, neither he nor the Legislature ever intended that the defendant and a reputable physician should be subject to the mere whim of a plaintiff, his physician or his counsel. By such a construction the last six words of the quotation " not personally objectionable to the plaintiff," would, or at least could, at the instance of a plaintiff, destroy its major premise.

The advance of the science of health and the dictates of fashion have in the light of the gay nineties all but bared the human body. Yet the general sentiment of mankind concerning the inviolability of the person and the compelling of any one to lay bare his or her body or submit it to the touch of a stranger without lawful authority, remains the same. It was so expressed in 1890 by Justice GRAY, in *Union Pacific Railway Co.* v. *Botsford* (141 U. S. 250, at p. 252). It still remained, in 1894, in the opinion of Judge O'BRIEN in *Lyon* v. *Manhattan Ry. Co.* (142 N. Y. at p. 306). During the next score of years the practical result of the judicial right of compulsory physical examination is traced by Judge POUND in 1912, in *Mizak* v. *Carborundum Co.* (*supra*). There is no reason to alter or modify the principles therein enumerated, by reason of changes during the last nearly score of years.

On the other hand, many fancied fears of our judicial ancestors concerning the evils of compulsory physical examination, have been swallowed up in the multiplication of negligence litigation and the necessary or unnecessary speed of trial work In 1894 Judge O'BRIEN, in *Lyon* v. *Manhattan Ry. Co.* (142 N. Y. 298, 304), said: " If it [the power to order physical examination] is used only for the purpose of enabling the defendant to prepare expert witnesses to give testimony at the trial, it will be hardly possible to keep the fact from the jury, and it is easy enough to see how such an element in the case might be used to excite sympathy, stimulate prejudices, and, in some cases possibly to enhance damages."

The trial judge of to-day finds that negligence cases are in a great majority upon his calendar. Orders for the physical examination of plaintiffs by defendants in personal injury actions are stipulated or ordered in nearly every case. So voluminous have they become that in New York city the orders are initiated by the justice at

Special Term, in order to save time, and even in this county they are often signed in dozen and half-dozen lots. Practically, physical examinations are no longer sought for any purpose save the preparation of expert medical testimony for use upon a trial. Judge O'Brien's fear of enhancing damages, exciting sympathy and stimulating prejudice, has gone the way of the ancient bugaboo of a fishing excursion in an examination before trial. Perhaps in another generation the inadvertent mention of the words "insurance company," in the presence of a jury, may no longer strike terror to the hearts of timid judges. While adhering strictly to the fundamental and unchanging rights of security of person and property, we must dictate our practice in the light of modern conditions.

The court would not hesitate to appoint Dr. Gray at its own instance had no suggestion been made by counsel for either party. The very nature of his task forbids that he or his selection be in any manner subject to the arbitrary dictation of the plaintiff, his counsel or physician.

The motion should be granted, both as a matter of law and also in the exercise of that discretion which in motions of this character always remains with the court.

Motion granted, with costs.