SAMUEL HOROWITZ and GUSSIE HOROWITZ, Plaintiffs, *v.* BROOKLYN & QUEENS TRANSIT CORPORATION, Defendant.

City Court of New York, Special Term, Kings County, May 4, 1939.

*W. H. Sefton*, for the plaintiffs.

*Friedman & Friedman*, for the defendant.

LIVINGSTON, J. In this action to recover damages for personal injuries, a motion has been made by defendant, pursuant to the provisions of section 306 of the Civil Practice Act, for the physical examination of one of the plaintiffs. Defendant asserts a right to have the court direct the examining physician to deliver to it, but not to plaintiff, a copy of the report. Plaintiff claims an equal right to a copy. There appears to be some confusion on this subject.

The admonition that "While adhering strictly to the fundamental and unchanging rights of security of person and property, we must dictate our practice in the light of modern conditions," as set forth in *Black* v. *Bisgier* (139 Misc. 100), is a worthwhile guide. After all, the ordinary problems arising in the practice of the law, should be solved in a practical manner and not be ignored as judicial untouchables.

Generally, the injured plaintiff is examined by his family doctor or one employed by a hospital, clinic, fraternal organization or other group with which plaintiff is associated. If the injuries are severe, or threaten to have permanent consequences, specialists may be consulted. If the medical advisers disagree, it is a reasonable assumption that those whose opinions are most helpful to plaintiff's cause will be called as witnesses.

There is thus available to plaintiff medical testimony of which the defendant has no knowledge. Defendant is, therefore, at a disadvantage, being unable to present to the court any facts or competent opinion evidence. The common law afforded defendant no relief, as it made unlawful a physical examination of plaintiff by defendant's physician. (*Hayt* v. *Brewster, Gordon & Co.*, 199 App. Div. 68.)

Customarily, however, defendant employs a physician who obtains a physical examination of plaintiff, merely by asking for it. Most legal practitioners do not refuse such a request. There are, however, some attorneys who do refuse. To meet such contingency, it would appear, section 306 of the Civil Practice Act, and its ancestor, section 873 of the Code of Civil Procedure, were enacted.

*Lyon* v. *Manhattan R. Co.* (142 N. Y. 298, 302) defined the purposes of the section by saying that it " prescribes a method of aiding the court and jury in the correct determination of an issue of fact raised by the pleadings." This generalization was given a more pointed significance in *Hayt* v. *Brewster, Gordon & Co. (supra)*, where it was stated: " There is no doubt about the reason for such enactment. Its purpose was to afford protection to the defendants, to enable them to discover the truth in regard to injuries claimed to have been received by plaintiffs, and thereby to promote justice." To the same effect: *Mizak* v. *Carborundum Co.* (75 Misc. 205; affd., 151 App. Div. 899) and *Kelman* v. *Union R. Co.* (202 id. 487).

We now come to the question as to the so-called doctor's report. In these busy days, a doctor, called upon to make a physical examination of an injured person whom he will see but once, most certainly will make a written record and submit a written report to any party to whom he is required to impart the results of his findings. It is inconceivable that any jury, say a year after an examination, would place much credence in the testimony of a doctor who relied solely upon his memory. Yet, it was early held that the statute does not call for a written record or report. (*Lyon* v. *Manhattan R. Co.*, *Mizak* v. *Carborundum Co.*, *Kelman* v. *Union R. Co.*, *supra; Matter of Davies*, 168 N. Y. 89, 108.) However, the modern tendency seems to be to expect and direct a written report.

The cases already cited seem to indicate an intention not to afford to the plaintiff the information gleaned from the doctor's examination. They are probably based upon the theory that to afford such relief to the plaintiff might well lead to unexpected and undesirable consequences, by placing a premium upon plaintiffs' refusing examinations in all cases, upon the chance that, if the results of an examination by a physician appointed by the court be favorable to a plaintiff, there would be made available to plaintiff another witness, at defendant's cost. There also might result an encouragement to unmeritorius litigation in cases where plaintiff had not even consulted a doctor. In such event, plaintiff might be tempted to gamble a lawsuit on the theory that the doctor, appointed by the court, and paid for by the defendant, might supply plaintiff with a favorable report. One case (*Stoczynski* v. *Croft*, 166 Misc. 553) has held that the court should not direct the doctor to report to plaintiff on the theory that we cannot compel one party's witnesses to disclose their testimony to the other party, apparently deeming the doctor defendant's witness.

While I am inclined to agree with the foregoing view of the purposes of section 306, I feel constrained, however, to follow the rules adopted by the Appellate Division of this department. In *Goldenberg* v. *Zirinsky* (114 App. Div. 827 [2d Dept.]) the purpose of the statute was defined as follows: " The intent was to have an examination by physicians or surgeons designated by the court, owing no obligations to the parties, the evidence so brought out to be available to either party." In a later case (*Tutone* v. *New York Consol. R. R. Co.*, 189 App. Div. 954 [2d Dept.]) a similar policy was followed.

Therefore, in harmony with the latter rule, the motion for reargument is granted and copies of the report will be directed to be delivered to plaintiff as well as defendant. The doctor appointed by the court having declined to serve, another will be designated. Submit order on notice.