Michael J. Montesano, J.
On the 6th day of April, 1956, a month prior to the commencement of this action to recover damages for personal injuries sustained by the plaintiff, Lillian Swiatlowski voluntarily submitted to a physical examination by a physician selected by the defendant. Presumably the defendant has in his possession the report of this examination. After the commencement of the action and approximately two months subsequent to that examination, the defendant now moves pursuant to section 306 of the Civil Practice Act for an order directing plaintiff to submit to a second physical examination.
Defendant urges no special reason why a re-examination is necessary; he does not claim that intervening the first and proposed second examination anything new has arisen which makes *709 it necessary that it be had; nor does defendant factually support the conclusory allegation ‘‘ of ignorance of the nature or extent pf plaintiff’s injuries”. In such circumstances the motion should be denied on the merits. (Larzelere v. Schaffer, 2 A D 2d 651.)
The defendant contends that the Larzelere case does not apply since in that and other related cases the first physical examination was made after the commencement of the action, while in the case before me, the first examination was made prior thereto. It is urged that without regard to the number of voluntary examinations to which an injured party may submit prior to the commencement of an action, nonetheless the defendant is entitled as a matter of right to one examination ‘‘ in the action ” after it has been commenced. He cites Cronin v. Anderson (226 App. Div. 691 [2d Dept.]), Orlando v. Syracuse Rapid Transit Railway Co. (109 App. Div. 356 [4th Dept.]) and Anthony v. Bradshaw (282 App. Div. 851).
Orlando v. Syracuse Rapid Transit Railway Co. (supra), however, holds to the contrary. It is not clear from the opinion if the first examination was held prior or subsequent to the commencement of the action. A careful examination of the record on appeal discloses that the physician examined the plaintiff on January 24, 1905, while the action was not commenced until January 31. There, although plaintiff had prior to the commencement of the action voluntarily submitted to an examination, a motion to re-examine subsequent to its commencement, in the absence of a showing by the moving party of special reasons therefor, was denied.
The statute does not expressly limit the number of examinations. Sufficient reasons appearing therefor, the court may grant one or several. (Conforti v. Central School Dist. No. 3, 284 App. Div. 1084.) The defendant is not entitled to it as a matter of right; the application is addressed to the discretion of the court. (Bartolotta v. Delco Appliance Corp., 254 App. Div. 809; Garrow v. Lomio, 207 Misc. 97.)
The plaintiff does not too strenuously oppose this motion. She urges, however, that if an order is granted it be made on condition that ‘‘ the court select an impartial physician * * * who shall be required to furnish to both plaintiff and defendant a copy of his report of such examination.”
This poses a troublesome but an interesting problem. At first blush it would appear that the precise problem was before the court in Mizak v. Carborundum Co. (75 Misc. 205, affd. 151 App. Div. 899 [4th Dept.]). The latter case has been cited frequently as authority for the rule that the examined injured party is *710 not entitled to a copy of the examining physician’s report. (Stoczynski v. Croft, 166 Misc. 553; Callan v. Adams, 176 Misc. 292; Kelman v. Union Railway Co., 202 App. Div. 487.)
While the question before the court in Misak v. Carborundum Co. (supra), was similar, it did not present procedurally the precise problem now confronting me and is otherwise distinguishable. In the Misak case the motion for an order to examine the injured party was uncontested. Only after the order was granted and the physical examination made by a physician nominated and employed by the defendant, did the plaintiff move for a copy of the examining physician’s report and findings.
Throughout its opinion the court emphasized that the examining physician was selected, employed and paid by the defendant. “ [T]hey are under no duty or obligation to act until defendant employs them to make the examination. Thus they necessarily become the employees of the defendant before they act and, when they act, it is in that capacity. * * * They should be satisfactory to defendant”. (Pp. 208-209.) Thus the physician was an employee of the defendant engaged in the preparation of the case for trial. In such case his reports and findings could well constitute part of the ‘ ‘ work product of the lawyer ” and not subject to reach or examination by the plaintiff before trial. (Hickman v. Taylor, 153 Fed. 2d 212, 223, affd. 329 U. S. 495; Tavern Fruit Juice Co. v. Long Island R. R. Co., 279 App. Div. 985.)
The practice is quite common for the court to designate the physician suggested by the defendant but the statute (Civ. Prac. Act, § 306) requires that “ the court, by order, shall direct that the plaintiff submit to a physical examination by one or more physicians or surgeons to be designated by the court or judge ’’. (Goldstein v. Feinerman, 2 Misc 2d 554; Del Ra v. Vaughan, 1 Misc 2d 636; Ponzi v. City of New York, 269 App. Div. 949; Horowitz v. Brooklyn & Queens Transit Corp., 171 Misc. 321, 323.) A physician designated and appointed by the court is its agent answerable to and subject to its directions. (4 Moore on Federal Practice [2d ed.], § 35.06.) He is then under obligation to neither party, and his report may then be ‘‘ made available for either or both parties to the action ”. (Goldenberg v. Zirinsky, 114 App. Div. 827, 828.) But even if I appoint the designee of the defendant as the examining physician, as I am about to do, nonetheless he is still the agent of the court and answerable to it.
With the deluge of personal injury eases clogging our courts in the metropolitan districts, there has been a definite tendency *711 to liberalize our practice as one of the means of relieving the congestion. Where heretofore pre-trial examinations in discovery proceedings pursuant to section 288 et seq. of the Civil Practice Act were limited in scope and restricted to those issues in which the party who sought the examination had the affirmative (Lattimer v. Sun-Herald Corp., 208 App. Div. 503; 5 Carmody-Wait on New York Practice, § 56), in recent years this restrictive practice has been greatly liberalized. Now the scope has been broadened and many of the former restrictions removed. (Public National Bank v. National City Bank, 261 N. Y. 316; Dorros, Inc., v. Dorros Bros., 274 App. Div. 11.)
In 1952 aimed specifically at personal injury actions rule 121-a of the Rules of Civil Practice was adopted whereby examinations may now be had on ‘‘ all of the relevant facts and circumstances in connection with the accident, including negligence, contributory negligence, liability or damages ”. These statutes and rules have more frequently been used to inquire into the liability and not the damage issue. These same procedural devices could further be utilized in examinations on the damage issue to ascertain and determine the extent, nature and degree of the injuries.
If a lawsuit (as is often said) is not a game of chance, no part of it should be left to chance. Channels tending to develop and ascertain in advance of trial the two essential issues in tort actions — liability and damages, if we are to heed the current trend, should not be unnecessarily obstructed. The surprise element should be eliminated or reduced. Armed with adequate, if not full, knowledge of the claims of the other, the parties would then be on an equality. This should certainly go far toward arriving at fair settlements and otherwise facilitating early disposal of cases before trial or by a speedy trial.
“ The reason, in many cases, that the parties are unable to agree upon a figure for settlement, is their underlying inability to agree upon the nature of the injuries suffered by the plaintiff. Were they able to predict with reasonable assurance the medical findings which would be made in the event of trial, the areas of possible disagreement would be substantially narrowed. But such predictions are hazardous in the extreme, so long as partisan expert testimony is the only basis for arriving at the medical facts.” (Impartial Medical Testimony, p. 9 [A Report by a Special Committee of the Association of the Bar of the City of New York], The MacMillan Company, 1956.)
The decisions in this State requiring examining physicians to furnish the examined party with a copy of their report are in conflict. Kelman v. Union Railway Co. (202 App. Div. 487 [1st *712 Dept., 1922]) and Mizak v. Carborundum Co. (75 Misc. 205, affd. 151 App. Div. 899, supra [4th Dept., 1912]) are the leading authorities against granting a copy. Until recently the Second was the only department in the State which held to the contrary. (Goldstein v. Feinerman, 2 Misc 2d 554, supra; Goldenberg v. Zirinsky, 114 App. Div. 827, supra; Tutone v. New York Cons. R. R. Co., 107 Misc. 571 [1919].) But it is interesting to note that the First Department has now in operation a “ Medical Expert Testimony Project ” (Bronx County Supreme Court Rules, Special Rule for Medical Examinations on Personal Injury Actions; New York County Supreme Court Rules, Special Rule for Medical Examinations in Personal Injury Actions) whereby “ Copies of the report of the examining physician will be made available by the clerk of the Medical Report Office to all parties ”.
The Third Department in Wilhelm v. Abel (1 A D 2d 55 [1955]) indicated its answer to the question, should it reach it. Less than a year later the precise question was squarely presented in Del Ra v. Vaughan (1 Misc 2d 636, supra). On appeal, the Third Department affirmed the Special Term order which designated the examining physician and directed that a copy of the report be furnished to the attorney for the plaintiff (Del Ra v. Vaughan, 2 A D 2d 156). The Federal courts have embodied this requirement in their rules of practice (Federal Rules of Civil Pro., rule 35, subd. [b]): “If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions ”.
It is urged that to insure equality the injured party’s physician should be required to furnish a copy of his report to the defendant. This is plausible and is not without merit but there is no such inherent power in the court and it is doubtful if, under section 306, the court could properly impose it as a condition. It could be construed as an “ extraneous condition ’’ (Anthony v. Bradshaw, 282 App. Div. 851, supra) and considered too broad an extension of the court’s power which would further encroach upon the rights of the injured party. (McQuigan v. Delaware, L. & W. R. R. Co., 129 N. Y. 50.)
It is, however, worthy of note that subdivision (b) of rule 35 of the Federal Rules of Civil Procedure provides that “the party causing the examination to be made shall be entitled on request to receive from the party examined a like report of any examination, previously or thereafter made of the same mental or physical condition ”.
*713 It is known that some physicians continuously engaged by the parties become partisan and their reports are colored. With the knowledge that his report might be subject to examination and close scrutiny it might deter those prone to do so from exaggerating or minimizing the degree of the injuries or the extent of the disability. It should result in all interested parties having fairly accurate detailed reports relating to the injuries. This should materially aid in arriving at settlements prior to and at pre-trial conferences with the court.
It is said that the examining physician would deliberately confine his report to the insignificant and the uncontroversial and omit the important. This is, of course, premised on the assumption that the examiner is an employee of one of the parties and not the agent of the court. We have complete confidence in our brethren of this profession and should not, particularly in this different setting, ascribe in advance, even to a limited few, a readiness to practice this mild form of deception. The essentials will no doubt be incorporated in the physician’s report. Nevertheless he is free to advise and counsel with the attorney on other medical phases; thus he serves in a dual capacity, as agent of the court and as an expert for the attorney.
The motion to physically examine the plaintiff Lillian Swiatlowski is granted. The court designates Dr. Richard Gardner as the examining physician and directs that a copy of his findings and conclusions be furnished to the examined party or her attorney. The examination to take place at such time and place as the parties agree upon.
Submit order accordingly.