**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rolando CORTEZ and Gilberto Castaneda, Defendants-Appellants.**

No. 75–2166
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 9, 1975.

---

* Rule 18, 5th Cir.  See *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5th Cir. 1970, 431 F.2d 409, Part I.

**2**

Sherman A. Ross, Houston, Tex., for Cortez.

Keith B. Browne, Kingsville, Tex., for Castaneda.

Edward B. McDonough, Jr., U. S. Atty., Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Cortez was convicted of conspiracy to import and possess, with intent to distribute a controlled substance (300 pounds of marijuana), in violation of §§ 841(a)(1), 846, 952(a) and 963 of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (1970). He appeals from this judgment of conviction, rendered after a jury verdict, under Count I of a three count indictment. Appellant Castaneda was convicted under an identical count and was also convicted under Count III of an indictment, which charged him with unlawful possession, with intent to distribute, a controlled substance, in violation of § 841(a)(1) of the Act. Castaneda appeals from this judgment of conviction, which was rendered after he waived trial by jury. The sentences of the two appellants were identical except that Cortez was sentenced to four years imprisonment, but Castaneda was sentenced to only three years imprisonment. Finding no merit in the contentions of either appellant, we affirm the judgments of conviction and the sentences rendered as a result thereof.

On June 27, 1974, Customs Officer Garcia and Deputy Sheriff Espinosa were patrolling an area of Falcon Lake,[1] Texas, known as "Oscar's Cove", which is near Zapata, Texas. At the cove, Officer Garcia discovered signs of a boat (or boats) having landed and evidence of what appeared to have been burlap bags being dragged on the shoreline.

The two officers, accompanied by two other deputies, returned to the area later in the evening and placed it under surveillance. At approximately 3 a. m. Garcia saw lights in the vicinity of the landing and at about 5:30 an automobile pulled up to the gate at the entrance of

---

1. Falcon Lake, located above a dam, actually is a widening of the Rio Grande and, among its many attributes, possesses numerous inlets, some of which extend for several miles. Technically, the international boundary line between Mexico and the United States runs down the middle of the lake.

the cove road. There were at least two occupants in the vehicle because one party opened the gate while the other turned off the car's lights and drove through the gate and toward the landing. The four law enforcement officers were unable to see either the vehicle or the two occupants clearly enough to formulate a description of them on this occasion.

At this time the two additional county deputies took up positions about one-quarter mile north of the gate on Highway 83. Approximately twenty minutes later, Garcia heard an automobile returning from the landing, again with no lights. A voice said "Take off" and the vehicle drove toward Zapata, with lights still off.

Immediately, Garcia contacted the two deputies in the chase vehicle and ordered pursuit of the suspect automobile. Garcia was unable to locate the owner of the voice which had urged the driver to "Take off", but he did hear the sound of a motorboat moving away. Deputy Espinosa, however, overtook the suspect car within less than a minute and only a mile from the gate.

Appellant Castaneda was the driver; when the trunk was opened pursuant to Espinosa's order, 300 pounds of marijuana, in burlap bags, was found. Appellant Castaneda was arrested and advised of his *Miranda*[2] rights. Subsequently, Castaneda admitted knowledge that the cargo was marijuana and stated that the person who opened the gate was appellant Cortez, that Cortez was to meet him at a service station on Highway 83 and that Cortez owned the car.

Meanwhile, a license check had substantiated the fact that appellant Cortez owned the car. As Deputy Espinosa and another deputy returned from jailing Castaneda to the surveillance area, they observed a man emerging from the brush three-quarters of a mile from Zapata on the Falcon Lake side of the highway.

The man identified himself as Rolando Cortez of Kingsville, Texas, and he was arrested and given the *Miranda* warnings. Appellant Cortez then began informing the law officers that he and appellant Castaneda had traveled from Kingsville to Laredo, Texas, and that in Laredo the two had been drinking for quite awhile. Further, said Cortez, Castaneda had borrowed his car and never returned. Thus, appellant Cortez claimed, he had set out by foot to walk from Laredo to Kingsville and he was in the process of this trek when arrested near Zapata. Zapata is 60 miles from Laredo.

After the two arrests a customs officer returned to the landing and observed footprints, automobile tire tracks and markings on the bank that appeared to be the result of burlap bags being dragged across it. The officer matched appellant Cortez' shoes with the prints and found that they were identical.

■ Appellant Castaneda's sole assignment of error is the trial court's denial of his motion to suppress the evidence found in the automobile search. This contention is devoid of merit. The search was incident to a valid arrest which was premised on probable cause. Probable cause certainly was established by the many suspicious circumstances here. The Falcon Lake area is known, for example, as a landing point for drug smuggling activities; the officers heard and observed evidence of such activities; after placing the area under surveillance, an automobile entered the cove, remained for less than half an hour, and then left—this all occurring in the "wee" hours of the morning and without the benefit of headlights or taillights. Less than a minute later, appellant Castaneda was stopped only a mile from the cove. In this situation, the facts and circum-

2.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

stances within the officers' personal observations and knowledge surely would " 'warrant a man of reasonable caution in the belief that' an offense has been or is being committed." [3]

Appellant Cortez argues four grounds for reversal of his conviction. He first contends that the evidence is insufficient to support a conviction of conspiracy to import and possess marijuana with intent to distribute it. This argument borders on the frivolous: the conspiracy, importation and possession elements are reasonably established by such factors as: (1) the "timely" presence of appellant Cortez at the scene without reasonable explanation, (2) the automobile was owned by him, (3) the admissions of co-defendant Castaneda and (4) the footprint at the landing. The distribution element is reasonably established by the fact that it would be virtually impossible for two mere mortals to consume 300 pounds of marijuana, personally, within a reasonable span of time. The evidence surely was sufficient to support Cortez' conviction on Count I.

Secondly, appellant Cortez remonstrates that the district court erred in failing to charge the jury specifically on the circumstantial nature of the evidence against him. This contention is without merit. The "reasonable hypothesis" test applied to circumstantial evidence, *i. e.,* that such evidence must not only be consistent with guilt, but must also be inconsistent with innocence, is employed by the *court* in assaying such evidence, but it is not necessary to so instruct the jury when they are instructed properly on "reasonable doubt," *see, e. g., United States v. Hansbrough,* 450 F.2d 328 (5th Cir. 1971). The "reasonable doubt" instruction was clearly given by the district court in this case. The "reasonable

hypothesis" contention of appellant Cortez must, therefore, be rejected.

Cortez' third point of contention is based on the district court's statement in withdrawing Counts II and III from the jury wherein the court said:

> [i]f you should accept that testimony, it is not in my judgment sufficiently conclusive to establish his guilt on those two counts. And hence, I am withdrawing them from your consideration. I am submitting the case to you on the First Count, which charges a conspiracy.

The argument as to this charge is best expressed in the words of appellant Cortez, "The trial court's instructions invaded the Providence (*sic*)[4] of the jury and left them with no alternative but to find a verdict of guilty." This argument is specious. The district judge was merely (and quite correctly) explaining to the jury his reasons for dismissing Counts II and III—surely Cortez is not attempting to contend that such dismissal was prejudicial. At worst, this statement was a comment on the evidence by the trial court. The jury was instructed that they were to rely on their own memories of the evidence and that the court's comments on the evidence were not binding. There was no error here.

Finally, appellant Cortez alleges that the actions of the lower court in sentencing him to imprisonment for a year longer than his co-defendant violated due process and equal protection. This claim likewise is without merit. The sentence was within the statutory limit and Cortez "has demonstrated no abuse of judicial discretion which would entitle him to relief," *United States v. Harper,* 505 F.2d 924, 926 (5th Cir. 1974) (citation omitted).

Affirmed.

---

3. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), *quoting in part Carroll v. United States,* 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (previous citations omitted).

4. We are assuming that appellant Cortez intended to question an invasion of the jury's *province.* Although some federal judges have been accused recently of lacking in moral fiber, let us hope that none has yet been so impious as to invade a jury's *Providence.*