# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Preservation Society of Charleston, Historic Charleston Foundation, Historic Ansonborough Neighborhood Association, South Carolina Coastal Conservation League, Charlestowne Neighborhood Association, Charleston Chapter of the Surfrider Foundation, and Charleston Communities for Cruise Control, Petitioners,

v.

South Carolina Department of Health and Environmental Control and South Carolina State Ports Authority, Respondents.

Appellate Case No. 2018-000137

------

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

------

Appeal from the Administrative Law Court
Ralph King Anderson III, Administrative Law Judge

------

Opinion No. 27949
Heard June 11, 2019 – Filed February 19, 2020

------

## REVERSED AND REMANDED

------

J. Blanding Holman IV, of Southern Environmental Law Center, of Charleston; Amy E. Armstrong and Jessie A. White, both of South Carolina Environmental Law Project, of Pawleys Island; and Jefferson Leath Jr., of

Leath, Bouch & Seekings, LLP, of Charleston, for Petitioners.

Bradley D. Churdar, of South Carolina Department of Health and Environmental Control, of North Charleston; Randolph R. Lowell, of Willoughby & Hoefer, PA, of Charleston; and Tracey C. Green and Chad N. Johnston, both of Willoughby & Hoefer, PA, of Columbia, for Respondents.

---

**JUSTICE JAMES:** Petitioners seek a contested case hearing in the administrative law court (ALC) to challenge the propriety of state environmental authorizations issued by the South Carolina Department of Health and Environmental Control (DHEC) for a project relocating and expanding the passenger cruise facility at the Union Pier Terminal (the Terminal) in downtown Charleston. Petitioners maintain they have standing to seek this hearing as "affected persons" under section 44-1-60(G) of the South Carolina Code (2018). The ALC concluded Petitioners did not have standing and granted summary judgment to Respondents. The ALC terminated discovery and also sanctioned Petitioners for requesting a remand to the DHEC Board. The court of appeals affirmed. *Pres. Soc'y of Charleston v. S.C. Dep't of Health & Envtl. Control*, Op. No. 2017-UP-403 (S.C. Ct. App. filed Oct. 18, 2017). This Court granted a petition for a writ of certiorari. Because we find Petitioners have standing, we reverse the grant of summary judgment and remand the matter to the ALC for a contested case hearing. We instruct the ALC to establish a reasonable schedule for the completion of discovery. We also reverse the sanction imposed by the ALC.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners, consisting of several citizens groups and neighborhood associations, filed a request for a contested case hearing in the ALC in February 2013 against Respondents—DHEC and the South Carolina State Ports Authority (the Ports Authority). Petitioners seek to challenge DHEC's issuance of a Critical Area Permit and Coastal Zone Consistency Certification in December 2012 allowing the Ports Authority to construct a new cruise ship facility at the Terminal by renovating Building 322, a vacant warehouse. DHEC authorized structural changes to the building; the construction of two covered staging areas to handle passengers, luggage, and shipping supplies; and the installation of five clusters of concrete pilings to support adding three elevators and two escalators.

The Terminal is owned and operated by the Ports Authority and sits on a 63-acre property on the eastern side of the Charleston peninsula along the Cooper River. The site is near the Charleston Historic District, which has been designated a National Historic Landmark on the National Register of Historic Places. Because the project is planned for a statutorily defined critical area of South Carolina's coastal zone, the Ports Authority is required to obtain a permit from DHEC prior to taking any action in the critical area. In addition to the state permit, the Ports Authority is required to obtain a federal permit from the United States Army Corps of Engineers (the Army Corps). The Army Corps issued a federal permit, but, as noted below, the issuance of that permit was successfully challenged before the United States District Court for the District of South Carolina.

Petitioners are community organizations dedicated to preserving and protecting historic districts and neighborhoods and to maintaining historic resources that affect the quality of life. These organizations have members who are property owners in the neighborhoods very close to the proposed project. Petitioners contest both DHEC's permitting decision and its application of the critical area statutes and regulations. Petitioners contend they have standing as "affected persons" to obtain a contested case hearing in the ALC pursuant to section 44-1-60(G) of the South Carolina Code (2018), which provides "[a]n applicant, permittee, licensee, or affected person may file a request with the [ALC] for a contested case hearing" within a specified time frame. Determining whether Petitioners are "affected persons" pursuant to section 44-1-60(G) is the key to resolving the issue of standing.

Petitioners assert the new passenger facility would be several times larger than the existing facility and would be engineered to sustain larger cruise ships. The ships would also be located much closer to the properties of Petitioners' members, as the planned project relocates the passenger facility from one part of the Terminal to what is currently a "storage shed." Petitioners contend relocation and expansion of the facility would generate substantial increases in traffic, hazardous diesel soot emissions, and water pollution that would directly and adversely affect their nearby members. For example, Petitioners note in their request for a contested case hearing that the fuel burned by cruise ships was then "667 times dirtier than diesel fuel burned by 18-wheel trucks" (although new emission standards were being introduced). Petitioners also submitted affidavits from some of their individual members. The affiants state they have soot covering their homes that has to be cleaned regularly and they are forced to retreat indoors because of breathing problems caused by cruise ships utilizing the existing facility. The affiants also claim these problems would increase with a closer, significantly expanded facility.

The Charleston Historic District and the Port of Charleston have been designated "Geographic Areas of Particular Concern" under DHEC's Coastal Management Program (CMP). State law requires that DHEC give areas with this designation heightened consideration when DHEC reviews activities for consistency with the CMP. Additionally, the National Trust for Historic Preservation has formally recognized the endangerment to Charleston's historic resources by placing Charleston on "Watch Status" on the National Trust's list of America's Most Endangered Places, and the World Monuments Fund has listed Charleston as a "Watch Site."

The United States District Court for the District of South Carolina issued an order ruling the federal permit for the project was void because the Army Corps failed to follow prescribed procedures in issuing the permit.[1] Petitioners then filed a motion in the ALC to vacate the state Critical Area Permit and Coastal Zone Consistency Certification issued to the Ports Authority by DHEC. In a December 20, 2013 order, the ALC denied Petitioners' motion to vacate the state permit and certification. The ALC found this case involved joint permitting applications filed with both state and federal regulatory bodies; however, the ALC further found jurisdiction of the permitting agencies was distinct and the federal district court's ruling did "not negate the [state] critical area permit and CZC Certification at issue in this case." The ALC stated, "At this stage of the litigation, there is not sufficient evidence for [the ALC] to determine the extent of DHEC's review or the procedures that were followed in issuing the permit."

The Ports Authority quickly moved for summary judgment, maintaining discovery had ended some seven months prior and contending Petitioners lacked standing to challenge the state permit and certification. In examining the issue of standing, the ALC observed the South Carolina General Assembly did not define the term "affected person" as used in section 44-1-60 and found that, "where a clear,

---

[1] *See Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, No. 2:12CV2942-RMG, 2013 WL 6488282 (D.S.C. Sept. 18, 2013). District Court Judge Richard Gergel determined the challengers had constitutional standing under Article III to contest the federal permit, and he further ruled the federal permit was void because it was improperly issued by the Army Corps. In relevant part, Judge Gergel found the Army Corps did not properly consider the scope of the project, which he found involved more than just the five clusters of concrete pilings to be installed in the protected zone. Judge Gergel found this unduly limited view of the scope of the project affected the Army Corps' analysis of the procedures to be applied in reviewing the propriety of the federal permit.

specific definition of 'affected person' is not available," the principles of constitutional standing set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), should be applied. Using the *Lujan* framework for its analysis, the ALC concluded Petitioners lacked standing to seek a contested case hearing. Consequently, on April 11, 2014, the ALC granted summary judgment to Respondents.

In a footnote to the summary judgment order, the ALC also ruled on Petitioners' motion seeking reconsideration of a discovery order filed March 3, 2014. The March 3 order denied Petitioners' motion to expand discovery on several grounds. The ALC vacated that order and denied the motion to expand discovery as moot in light of the grant of summary judgment.

In a separate order, the ALC granted the Ports Authority's motion for a sanction against Petitioners under SCALC Rule 72. The ALC found a sanction was warranted for what it deemed Petitioners' "frivolous" pursuit of a motion to remand the matter to the DHEC Board, and it required Petitioners to pay Respondents' attorney's fees ($9,300) as a sanction.

Petitioners appealed the ALC's rulings. The court of appeals affirmed.

## II.  DISCUSSION

## A.  STANDING

As noted above, the ALC granted summary judgment against Petitioners on the ground Petitioners lack standing to seek a contested case hearing, and the court of appeals affirmed. Petitioners contend this was error, and we agree. We will review the general concepts of standing before we examine the test for associational standing that applies to organizations pursuing actions on behalf of their members.

### (1) Overview of Standing Principles

"Standing has been called one of 'the most amorphous [concepts] in the entire domain of public law.'" *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (alteration in original) (citation omitted). Standing in environmental cases has always been particularly problematic, and observers have noted that the results, even from the Supreme Court of the United States, have been variable. *See* Cassandra Barnum, *Injury in Fact, Then and Now (and Never Again):* Summers v. Earth Island Institute *and the Need for Change in Environmental Standing Law*, 17 Mo. Envtl. L. & Pol'y Rev. 1, 7-8 (2009) (noting statutory standing and constitutional standing have become confused in our jurisprudence, especially in the realm of environmental

law); Erwin Chemerinsky, *Constitutional Law Principles and Policies* 59 (4th ed. 2011) ("Standing frequently has been identified by both Justices and commentators as one of the most confused areas of the law."). The growth of administrative agencies since the last century has also complicated the standing analysis. *See* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 226 (1988) (noting standing in the administrative context could refer to who may participate in agency rule-making or adjudicatory proceedings, who may bring original proceedings to challenge an agency's actions, or who may appeal from an agency's adjudicatory proceedings).

In its most basic sense, "[s]tanding refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right." *S.C. Dep't of Soc. Servs. v. Boulware*, 422 S.C. 1, 7, 809 S.E.2d 223, 226 (2018) (quoting *Michael P. v. Greenville Cty. Dep't of Soc. Servs.*, 385 S.C. 407, 415, 684 S.E.2d 211, 215 (Ct. App. 2009)). "Standing to sue is a fundamental requirement in instituting an action." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 639, 528 S.E.2d 647, 649 (1999). Standing may be acquired (1) by statute, (2) under the principle of "constitutional standing," or (3) via the "public importance" exception to general standing requirements. *Freemantle v. Preston*, 398 S.C. 186, 192, 728 S.E.2d 40, 43 (2012). Petitioners do not assert standing via the public importance exception. The concepts of statutory and constitutional standing are front and center in this appeal.

"Statutory standing exists, as the name implies, when a statute confers a right to sue on a party, and determining whether a statute confers standing is an exercise in statutory interpretation." *Youngblood v. S.C. Dep't of Soc. Servs.*, 402 S.C. 311, 317, 741 S.E.2d 515, 518 (2013). "The traditional concepts of constitutional standing are inapplicable when standing is conferred by statute." *Freemantle*, 398 S.C. at 194, 728 S.E.2d at 44; *see also ATC S., Inc. v. Charleston Cty.*, 380 S.C. 191, 195-98, 669 S.E.2d 337, 339-40 (2008) (turning to constitutional standing only after first considering and rejecting the application of statutory standing); *Bevivino v. Town of Mt. Pleasant Bd. of Zoning Appeals*, 402 S.C. 57, 64, 737 S.E.2d 863, 867 (Ct. App. 2013) (holding it is unnecessary to address constitutional standing or the public importance exception when the basis for the independent concept of statutory standing exists).

Constitutional standing is based on Article III of the United States Constitution, which limits the jurisdiction of the federal courts to actual cases or controversies. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (stating "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing" (alteration in original) (citation omitted)). In *Lujan*, the Supreme Court of

the United States stated "the irreducible constitutional minimum of [Article III] standing contains three elements":  (1) the plaintiff must have suffered an "injury in fact," i.e., an invasion of a legally protected interest that is concrete and particularized, and actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision.  504 U.S. at 560-61.

The concept of Article III standing as applied in the federal courts does not limit a state's ability to statutorily formulate standing criteria.  *See Duncan v. FedEx Office & Print Servs., Inc.*, 123 N.E.3d 1249, 1256 (Ill. App. Ct. 2019) (noting, for example, that a state court need not even define an "injury" the same way as in the federal forum); *see also Freemantle*, 398 S.C. at 194-95, 728 S.E.2d at 44-45 (observing South Carolina's FOIA statute legislatively grants standing to "any citizen of the State" to enforce a FOIA request and holding where the appellant asserted he was a citizen of South Carolina, "[n]othing more" was required for standing, i.e., the appellant did not have to show that he had a personal stake in the outcome of the matter).  However, this Court has held that "[w]hen no statute confers standing, the elements of constitutional standing must be met."[2]  *Youngblood*, 402 S.C. at 317, 741 S.E.2d at 518.

Here, Petitioners are community and neighborhood organizations comprised primarily of members who own property near the proposed passenger cruise facility.  As we will now discuss, an organization has associational standing to bring suit on behalf of its members when (1) at least one member would otherwise have standing (statutory, constitutional, or otherwise) to sue in his or her own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *See Beaufort Realty Co. v. Beaufort Cty.*, 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct. App. 2001) (citing the three-part test set forth in *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Associational standing advances some important objectives: it promotes judicial economy and efficiency by avoiding repetitive and costly independent actions by individual members, and it allows members who would have standing in their own right to pool their financial resources and legal expertise to help ensure complete and vigorous litigation of the issues.  *Save the Valley, Inc. v. Indiana-*

---

[2] "[T]he public importance exception may [alternatively] provide standing where the elements of constitutional standing are not met . . . ."  *Youngblood*, 402 S.C. at 317 n.5, 741 S.E.2d at 518 n.5.  As noted previously, Petitioners do not assert the public importance exception to this Court.

*Kentucky Elec. Corp.*, 820 N.E.2d 677, 680-81 (Ind. Ct. App. 2005). An additional advantage noted in some jurisdictions is that organizations are generally less susceptible than individuals to retaliation by offices responsible for executing the challenged policies. *Id.* at 681.

## (2) Application of Test for Associational Standing

### (a) First Element

To establish associational standing, an organization must first show that at least one of its members has standing in his or her own right. *See Beaufort Realty*, 346 S.C. at 301, 551 S.E.2d at 589; *see also Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 600-01, 550 S.E.2d 287, 291 (2001) (stating a plaintiff that is an organization may possess associational standing if it alleges that "one or more of its members will suffer an individual injury by virtue of the contested act"). Here, for any given Petitioner to have standing, at least one of its members must be an "affected person" as contemplated by section 44-1-60(G); as noted above, section 44-1-60(G) provides "[a]n applicant, permittee, licensee, or affected person may file a request with the [ALC] for a contested case hearing."

Unfortunately, section 44-1-60 does not define the term "affected person." Ordinarily, when a term is not defined in a statute, "the Court must interpret the term in accordance with its usual and customary meaning." *Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 99, 705 S.E.2d 28, 33 (2011). "Courts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the whole purpose of the statute and the policy of the law." *Id.*

There is no dispute that Petitioners (and their individual members) are "persons" for the purposes of section 44-1-60(G). That brings us to the usual and customary meaning of the word "affected." *Black's Law Dictionary* 70 (11th ed. 2019) defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." *Black's Law Dictionary* 53 (5th ed. 1979) similarly defines "affect" as "[t]o act upon; influence; change; enlarge or abridge; often used in the sense of acting injuriously upon persons and things."

Petitioners argue that, instead of simply applying the usual and customary meaning of the term "affected person" per *Travelscape*, the ALC and the court of appeals erroneously evaluated Petitioners' status as statutory "affected persons" by applying the criteria used to evaluate Article III standing. Petitioners argue the ALC and the court of appeals compounded this error by finding Petitioners must prove

not only that they are "affected persons" under the statute but also that they meet the *Lujan* test for constitutional standing. Petitioners argue the lower courts' approach renders the statutory term "affected person" meaningless and creates a heightened standard for statutory standing that could not have been the intent of the General Assembly.

In analyzing whether Petitioners have standing, the court of appeals acknowledged that section 44-1-60 does not define "affected persons." Citing *Travelscape*, the court of appeals agreed the term should be given its usual and customary meaning, but then found the *Lujan* test for constitutional standing should be applied. This was error. In concluding the *Lujan* test applies, the court of appeals relied on statutes and regulations governing *judicial* review, which set forth particularized requirements for invoking the jurisdiction of the appellate courts.[3] It also relied on *Smiley v. S.C. Dep't of Health & Envtl. Control*, 374 S.C. 326, 649 S.E.2d 31 (2007), a case in which this Court did not specifically rule on the issue of whether a constitutional standard should be applied to a statute allowing all "affected persons" to seek administrative review of an agency's permitting decision. *See generally Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 59 n.24 (D.C. Cir. 1988) (noting prior cases cannot serve as binding authority where particular objections as to a party's standing were never raised). We find these authorities are not controlling of the definition of "affected persons" in section 44-1-60.

Citing the *Lujan* test, the court of appeals found Petitioners had shown only potential injury to the public at large and had not shown that any of their members had sustained an injury in fact from the proposed Terminal expansion project. The court of appeals relied on *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 753 S.E.2d 846 (2014), in which this Court applied *Lujan* and found several organizations lacked standing to bring nuisance and zoning claims in the circuit court. In *Carnival Corp.*, we held the organizations lacked standing because the allegations of injury in fact advanced by the plaintiffs were insufficient.

---

[3] A contested case hearing in the ALC is distinguishable from judicial review. "[T]he ALC conducts a de novo hearing in contested cases, complete with the presentation of evidence and testimony." *Engaging & Guarding Laurens Cty.'s Env't ("EAGLE") v. S.C. Dep't of Health & Envtl. Control*, 407 S.C. 334, 344, 755 S.E.2d 444, 449 (2014). "[T]he ALC is authorized to make a final determination—after a final agency decision and subject to judicial review—as to whether an administrative agency should have granted or denied a particular permit." *Id.* The ALC acts as the fact-finder and is not bound by an agency's factual findings or permitting decision. *Id.*

As to the nuisance claim, we cited the absence of allegations that any of the organizations' members had personally and individually suffered any of the asserted harms. As to the zoning claim, we found the organizations did not allege that any of their members were adjacent or neighboring property owners as required by the statute allowing a private action for violation of a zoning ordinance.

Here, the court of appeals acknowledged Petitioners presented affidavits from individual members expressing concern over their reduced quality of life arising from the effects upon them *individually*, such as pollution and health effects, traffic congestion, property values, effects on their businesses in the area, and effects on the historical integrity of the area where they resided. For example, a member of the Coastal Conservation League stated in her affidavit that smoke emitting from cruise ships already physically impacted her and required her to retreat indoors when the ships were in town and that a larger facility, which would be much closer to her home, would only increase this adverse effect. Others attested to soot on and in their homes. Nevertheless, the court of appeals, relying on *Carnival Corp.*, agreed with the ALC that the claims of possible environmental and personal harm were purely speculative or were merely generalized grievances equally affecting the public as a whole.

Our approach in *Carnival Corp.* is not applicable here because *Carnival Corp.* involved nuisance and zoning claims initiated in the circuit court, not the statutory grant of administrative review in the ALC that is at issue here. Further, the plaintiffs in *Carnival Corp.* did not submit affidavits regarding individualized harm. We find Petitioners' allegations of potential harm to members in nearby neighborhoods, through affidavits and other filings, are not speculative.

The courts below essentially, and erroneously, required Petitioners to prove the existence of an environmental impact on their members and the surrounding neighborhoods as part of establishing standing. The ALC and the court of appeals failed to consider that the purpose of Petitioners' action is to seek administrative review of whether DHEC engaged in a proper environmental analysis in the first instance, including complying with all statutory and regulatory requirements, before issuing the permit for the Terminal project.[4] *Cf. City of Davis v. Coleman*, 521 F.2d

---

[4] Petitioners note these considerations include the extent to which all feasible safeguards were taken to avoid adverse environmental impacts, the project's effect on the value and enjoyment of surrounding landowners, the extent to which the development could affect irreplaceable historic and archeological sites in South Carolina's coastal zone, air and water quality impacts, and whether certain permit

661, 670-71 (9th Cir. 1975) ("Were we to agree with the district court that a NEPA plaintiff's standing depends on 'proof' that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake." (footnote omitted)); *Palm Beach Cty. Envtl. Coal. v. Fla. Dep't of Envtl. Prot.*, 14 So. 3d 1076, 1078 (Fla. Dist. Ct. App. 2009) ("The ALJ's standing analysis essentially boils down to a finding that the petitioners lacked standing because the petitioners failed to prevail on the merits, *i.e.,* they had failed to establish that the injected wastewater would migrate and impact water quality. This analysis 'confuse[s] standing and the merits such that a party would always be required to prevail on the merits to have had standing' . . . ." (alteration in original) (citation omitted)); *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 803 (Tex. App. 2000) ("United Copper confuses the preliminary question of whether an individual has standing as an affected person to *request* a contested-case hearing with the ultimate question of whether that person will *prevail* in a contested-case hearing on the merits. In essence, United Copper suggests that Grissom should be required to prove that he will *prevail* in a contested-case hearing just to show that he has the standing necessary to *request* such a hearing. We reject this argument . . . .").

The underlying action here is an administrative proceeding in which Petitioners seek a contested case hearing in the ALC to determine whether the proper procedures were followed by DHEC in issuing an environmental permit. The General Assembly surely intended DHEC to receive input from all persons affected by a project with potentially harmful environmental impacts. Such input, which continues until the administrative review process concludes with a contested case hearing, allows the agency's permit review process to fully assess the project's impact.

The purpose of this administrative process is to discover and evaluate harm to the surrounding environment and to persons who would be affected by the proposed project. Those living near the project are most likely to be impacted in ways that are distinguishable from the impacts generally falling upon the public at large, and some jurisdictions have emphasized the significance of this geographic proximity in cases involving the assessment of a project's environmental consequences. *Cf. City of Davis*, 521 F.2d at 671 ("The procedural injury implicit in agency failure to prepare an EIS[—]the creation of a risk that serious environmental impacts will be

---

conditions should be imposed to lessen the effects of the project on the homes and health of nearby homeowners.

overlooked[—]is itself a sufficient 'injury in fact' to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he may be expected to suffer whatever environmental consequences the project may have. This is a broad test, but because the nature and scope of environmental consequences are often highly uncertain before study we think it an appropriate test."). While geographic proximity may not be a determinative factor in every case, it is highly relevant to our analysis in this case. Here, members would suffer the environmental consequences Petitioners allege the project will create, such as breathing problems and other adverse health effects; increases in hazardous diesel soot; and increases in noise, traffic, and water pollution. Therefore, the members fall within the scope of any reasonable, ordinary definition of "affected persons." Accordingly, we hold Petitioners have established the first element of associational standing.

**(b) Second and Third Elements**

We find Petitioners have also established the second and third elements of associational standing. As for the second element (the interests at stake are germane to the organization's purpose), numerous jurisdictions have emphasized "that the germaneness requirement is undemanding." *See St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 625 (Mo. 2011) (en banc) ("Requiring otherwise would undermine the primary rationale of associational standing, which is that organizations are often more effective at vindicating their members' shared interests than would be any individual member."). Here, the interests Petitioners seek to protect through the review process—impacts on noise and soot pollution, traffic, human health, and the historic neighborhoods in which their members reside— clearly are germane to the purposes of these organizations. *Cf. White Plains Downtown Dist. Mgmt. Ass'n v. Spano*, 833 N.Y.S.2d 868, 874 (Sup. Ct. 2007) (holding "[t]he interests BID seeks to protect—existing patterns of population concentration, distribution or growth, existing community or neighborhood character, human health and economic interests—are germane to its purpose").

The third element requires Petitioners to establish that neither the claim asserted nor the relief requested requires the participation of Petitioners' individual members. Petitioners do not seek monetary damages on behalf of their members for specific instances of environmental harm; rather, Petitioners seek administrative review of the agency's permitting process. Although affidavits of individual members have been submitted in support of Petitioners' request for administrative review, administrative review of DHEC's permitting process does not require the individual members' substantial participation. *See generally Winnebago Cty. Citizens for Controlled Growth v. Cty. of Winnebago*, 891 N.E.2d 448, 457-58 (Ill.

App. Ct. 2008) (observing an association's standing to sue on behalf of its members "depends in substantial measure on the nature of the relief sought" and finding while individual testimony might be taken from nearby property owners to establish some facts in the case, this did not establish a substantial need for the individual members' participation and did not bar associational standing, particularly in light of the fact that the only relief sought by the associations did not involve monetary damages (citation omitted)); *White Plains Downtown Dist. Mgmt. Ass'n*, 833 N.Y.S.2d at 874 (holding the organization did not seek compensatory damages on behalf of its members, so the action did not require the individual participation of its members for the relief sought).

To conclude our discussion of Petitioners' status as "affected persons," we note section 44-1-60 provides for the participation of "affected persons" during other stages of the agency's permitting process; for example, an "affected person" is entitled to receive notice of the staff decision pursuant to section 44-1-60(E) and is entitled to request a final review conference pursuant to section 44-1-60(F). *See* S.C. Code Ann. § 44-1-60(E), (F) (2018). There is no dispute that Petitioners were considered "affected persons" with regard to these other stages of the permitting process. The dispute over their status arose only when Petitioners requested a contested case hearing. *See, e.g.*, *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control*, 390 S.C. 418, 431, 702 S.E.2d 246, 253 (2010) (holding "the [South Carolina Coastal Conservation] League was an affected person who asked to be notified" of the permitting decision under section 44-1-60).

If nearby property owners who have made individualized assertions of real, anticipated harm cannot satisfy the statutory standard in section 44-1-60 to acquire "affected person" status, it does not appear that anyone in this state could qualify to seek review of permits for the Terminal expansion project. This could not have been the intent of the General Assembly. We find at least one of Petitioners' members would have standing to sue in his own right, the interests the action seeks to protect are germane to the purposes of Petitioners' organizations, and neither the claim asserted nor the relief requested requires the participation of Petitioners' individual members in the action. Consequently, we hold Petitioners have established associational standing. We reverse the grant of summary judgment and remand the matter to the ALC for a contested case hearing.[5] However, we emphasize that our

---

[5] Because we find Petitioners have statutory standing, we need not address Petitioners' argument that the Ports Authority was collaterally estopped from disputing Petitioners' standing to challenge the state permit based on the fact that Judge Gergel previously found some of Petitioners' organizations had Article III

decision as to standing should in no way be construed as a signal of our view of the merits of the issues to be examined in either the contested case hearing or any other part of the permitting process.

## B. TERMINATION OF DISCOVERY

Petitioners next argue the court of appeals erred in upholding the ALC's ruling denying their motion to expand discovery and imposing a retroactive date for its termination. Petitioners assert the issue of discovery is not moot if summary judgment is reversed. We agree.

SCALC Rule 21(A) provides that in ALC matters, discovery shall generally be completed within 90 days of the date of the Notice of Assignment. However, discovery may be expanded or curtailed upon either (1) a motion for good cause shown, or (2) *sua sponte* by the ALC. *Id.*

The ALC denied Petitioners' motion to expand discovery pursuant to SCALC Rule 21(A) on the basis the motion was untimely (having been made after the 90-day default period) and because Petitioners had not shown additional discovery was warranted. Petitioners filed a motion for reconsideration. At that time, the Ports Authority's motion for summary judgment was still pending. The ALC issued an order granting summary judgment based on Petitioners' lack of standing. In a footnote included in the summary judgment order, the ALC vacated its original order regarding discovery and stated Petitioners' motion to expand discovery was denied as moot in light of the grant of summary judgment.

On appeal, the court of appeals stated it did not dispute Petitioners' assertion that there was correspondence among counsel of record, as well as communications with the ALC, that suggested the ALC and all parties proceeded as if discovery would continue after the 90-day period following the Notice of Assignment. However, the court of appeals ultimately upheld the ALC's determination, citing, *inter alia*, Petitioners' failure to move earlier for an extension under SCALC Rule 21(A). The court of appeals did not address the issue of mootness, although it also upheld the grant of summary judgment.

---

standing to challenge the federal permit. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining an appellate court need not address any issues remaining if another issue is dispositive).

Petitioners contend the court of appeals erred in upholding the ALC's discovery determination, and they maintain Respondents have fabricated procedural arguments on appeal in an effort to insulate the discovery issue from review. We reject Respondents' assertions that none of the discovery rulings are reviewable. Although the ALC held the discovery issue was moot after it granted summary judgment, common sense dictates that the issue of discovery is no longer moot if summary judgment is reversed. In addition, Petitioners did not waive the ability to challenge the discovery issue by stating they sought expanded discovery for the contested case hearing, not summary judgment. Petitioners were simply stating expanded discovery was not a critical component in evaluating Petitioners' standing to seek a contested case hearing, which was the sole subject of the summary judgment motion.

Having reversed the order granting summary judgment in Part A of this opinion, we find the issue of discovery is no longer moot. We further find Petitioners' motion to expand discovery was not untimely, as the parties informed the ALC of their need for expanded discovery, and the parties continued discovery well after the 90-day period, all with the ALC's knowledge and tacit approval. Under SCALC Rule 21(A), the ALC can *sua sponte* grant expanded discovery, which is effectively what occurred here. In addition, Petitioners' explanations as to why the parties delayed taking depositions until most of the discovery documents had been received and their need for additional time to take depositions in this complex case satisfied the good cause standard. Consequently, we reverse the rulings regarding discovery and instruct the ALC to issue a reasonable scheduling order for concluding discovery.

## C. SANCTION FOR FILING REMAND MOTION

Petitioners contend the court of appeals erred in upholding the ALC's imposition of a sanction under SCALC Rule 72 after the ALC found Petitioners' motion to remand the case to the DHEC Board for a final review conference was frivolous. We agree and reverse the imposition of a sanction.

"If the presiding administrative law judge determines that a contested case, appeal, motion, or defense is frivolous or taken solely for purposes of delay, the judge may impose such sanctions as the circumstances of the case and discouragement of like conduct in the future may require." SCALC Rule 72. "In determining whether a case or defense is frivolous, the administrative law judge may refer to S.C. Code Ann. § 15-36-10, the Frivolous Civil Proceedings Sanctions Act [FCPSA]." 2014 Revised Notes to SCALC Rule 72. "The amount and type of

sanction to be imposed is within the discretion of the presiding administrative law judge." *Id.*

The ALC indeed referred extensively to the FCPSA in reaching its decision to impose a sanction on Petitioners. While the Revised Notes to SCALC Rule 72 recognize that the "amount and type of sanction to be imposed" are matters for the sound discretion of the administrative law judge, a judge's threshold decision to apply sanctions under the FCPSA sounds in equity rather than at law. *See Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 167, 758 S.E.2d 483, 499 (2014). Therefore, we review the ALC's findings of fact with respect to its threshold decision to grant sanctions under the FCPSA by taking our own view of the preponderance of the evidence. *See id.*

The FCPSA provides an attorney or a pro se litigant in a civil or administrative action may be sanctioned for filing a frivolous motion or document if "a reasonable attorney presented with the same circumstances would believe the [item filed] is frivolous, interposed for merely delay, or merely brought for any purpose other than . . . adjudication of the claim or defense . . . ." S.C. Code Ann. § 15-36-10(A)(4)(a)(iv) (Supp. 2019). A sanction may also be imposed for "making frivolous arguments that a reasonable attorney would believe were not warranted under the existing law or if there is no good faith argument that exists for the extension, modification, or reversal of existing law." § 15-36-10(A)(4)(c). While subsection (A)(4) speaks only in terms of an attorney or pro se litigant being subject to sanctions under this act, subsections 15-36-10(C) and (E) extend the specter of a sanction to a party to the action. In determining whether to impose a sanction, a court must consider such factors as the explanation offered for the filing, the complexity of the case, any prior violations, and such other factors the court deems appropriate. § 15-36-10(E).

Here, DHEC issued a staff decision granting a Critical Area Permit and Coastal Zone Consistency Certification to the Ports Authority on December 18, 2012. Petitioners requested a final review conference from DHEC, asserting DHEC staff did not engage in a full analysis of the proper considerations in evaluating the permit application. After DHEC notified the parties that it had decided not to conduct a final review conference, Petitioners submitted a request for a contested case hearing with the ALC.

Petitioners thereafter filed a motion with the ALC requesting a remand to the DHEC Board for a final review conference. Petitioners argued the DHEC Board's failure to conduct a final review conference violated the mandatory language in section 44-1-60 imposing a duty on DHEC to conduct a review of the staff decision

upon timely request by an "affected person" to ensure the decision was consistent with agency policy and supported by the administrative record. *See* S.C. Code Ann. § 44-1-60(F) (2018) ("No later than sixty calendar days after the date of receipt of a request for final review, a final review conference *must* be conducted by the board, its designee, or a committee of three members of the board appointed by the chair." (emphasis added)). Petitioners asserted a final review conference would enable additional information to be supplied, if needed, and allow DHEC to apply its statutorily recognized "'specialized knowledge' in an evidence-based setting" so that "the agency's rationale (as opposed to [the] staff's rationale)" would be reviewed by the ALC.

The ALC found that although the word "must" initially could lead to the conclusion that whenever a request is made, the DHEC Board is required to conduct a conference, other language in the statute clarified that the DHEC Board has the discretion to "decline" to hold a final review conference. *See id.* ("If the board declines in writing to schedule a final review conference or if a final review conference is not conducted within sixty calendar days, the staff decision becomes the final agency decision, and an applicant, permittee, licensee, or affected person [may request] pursuant to subsection (G) a contested case hearing before the [ALC]."). The ALC found the use of the word "must" in section 44-1-60(F) means that in instances in which the DHEC Board actually *elects* to hold a conference, it must do so within the statutorily prescribed time. The ALC noted this meaning is further recognized in section 44-1-60(G)(1) of the South Carolina Code (2018). The ALC analyzed the statutes referring to DHEC's "specialized knowledge"[6] cited by Petitioners and found they applied to evidence presented by DHEC in the ALC hearing and did not impact the procedure for requesting a final review conference.

The Ports Authority subsequently sought the imposition of a sanction against Petitioners pursuant to SCALC Rule 72, including dismissal of the action, on the ground Petitioners' motion for a remand to the DHEC Board was a frivolous filing that was unsupported by any reasonable legal theory and interposed solely for purposes of delay. After a hearing, the ALC issued an order sanctioning Petitioners for making the remand motion and directing Petitioners to pay $9,300 to the Ports Authority for attorney's fees incurred in opposing the motion. The ALC found the motion was frivolous because Petitioners erroneously relied upon a single word ("must") in section 44-1-60(F) while ignoring other language in the statute and administrative rulings and appellate cases recognizing the DHEC Board's discretion.

---

[6] *See* S.C. Code Ann. § 44-1-60(F)(2) (2018); *see also* S.C. Code Ann. § 1-23-330(4) (2005).

The court of appeals affirmed the ALC, finding Petitioners disregarded a settled rule of statutory construction by failing to consider the statute as a whole.

The Ports Authority contends Petitioners have not preserved this issue for review because Petitioners did not appeal the ALC's order denying Petitioners' motion for remand. We disagree. The ALC's order denying the remand motion analyzed the statutory language and ruled solely on the issue of a remand to the DHEC Board for a final review conference. Petitioners did not appeal the remand order but did appeal the ALC's subsequent order finding their motion frivolous and imposing a sanction. While the remand order interpreting the statute is the law of the case, Petitioners' failure to appeal the remand order does not preclude them from appealing the order finding their motion frivolous and imposing a sanction.

Petitioners argue they did not disregard the additional language in the statute indicating ALC review is available if the DHEC Board "declines" to hold a conference. Rather, they read the provisions together (1) to mean the DHEC Board "must," in fact, hold a review conference, and (2) to provide an avenue for redress in the ALC if the Board fails to fulfill this statutory obligation. Petitioners acknowledge there are cases referring to the DHEC Board's discretionary authority to hold a conference; however, Petitioners assert they are not conclusive because the statements in those cases were made in general recitations about the facts or the permitting process, and the mandatory-versus-discretionary nature of a final review conference was not disputed. *See Ex parte Goodyear Tire & Rubber Co.*, 248 S.C. 412, 418, 150 S.E.2d 525, 527 (1966) ("It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." (quoting *Cohens v. Virginia*, 19 U.S. 264, 399 (1821))). Petitioners argue they have a duty to diligently advance their members' interests, and courts have routinely rejected sanctions for far more aggressive advocacy. Petitioners maintain the imposition of a sanction in these circumstances suppresses the vigorous representation that is needed to protect the public interest.

In upholding the sanction, the court of appeals cited no cases directly on point and relied instead on general authority holding a statute shall not be construed by concentrating on an isolated phrase. We agree with Petitioners that the cases cited by the ALC are not controlling because they did not involve a dispute over the particular point pertaining to a remand advanced by Petitioners. While Petitioners were incorrect on the law, our review of the preponderance of the evidence leads us to conclude their filing of the remand motion was not frivolous; we therefore reverse the ALC's imposition of a sanction.

## III. CONCLUSION

Because we find Petitioners have standing, we reverse the grant of summary judgment and remand the matter to the ALC for a contested case hearing, at which time the ALC shall establish a reasonable schedule for the completion of discovery. In addition, we reverse the order imposing a sanction on Petitioners.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE and HEARN, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** The majority finds Petitioners have "associational" standing because at least one member of each Petitioner has "statutory" standing under subsection 44-1-60(G) of the South Carolina Code (2018). The finding of statutory standing depends on whether the person is "affected." To understand what the Legislature meant by "affected," it is necessary to consider context. No person *positively* affected by government action would sue to challenge the action. A person will sue only when *negatively* affected. Being negatively affected is the same as being injured as we define constitutional standing. Therefore, the ALC and the court of appeals correctly understood the subsection 44-1-60(G) requirement of "affected person" to be the equivalent of having suffered an "injury in fact" under constitutional standing.

Constitutional standing requires a party challenging government action to allege an injury different in character—not merely by degree—from the manner in which the action will "affect" the general public. The majority appears to agree Petitioners do not have constitutional standing. Even under subsection 44-1-60(G), Petitioners are no more "affected" than I am, and thus do not have standing. The effects alleged by Petitioners are of the same character members of the general public will see from the DHEC permit. As a recent resident of Greenville County and a current resident of Berkeley County, I too will experience increased noise and traffic, air pollution, and water pollution when I visit the City of Charleston peninsula. In addition, *if* there are soot and breathing concerns—a very serious scientific question Petitioners should be required to answer with scientific proof—when I park my truck to walk the streets of the City, I too will find soot on my truck when I return, and I will suffer breathing issues while I walk. The manner in which the issuance of DHEC's permit will affect me is different only by degree from the manner in which it will affect the South of Broad residents driving this challenge.

I respectfully dissent.